IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

BENJAMIN EDWARDS, )
)
    Plaintiff, )
) CIVIL ACTION FILE
v. ) NO. 1:08-CV-1693-WSD
)
SUNSHINE RECYCLING, LLC, )
and LARRY JACKSON, )
)
    Defendants. )

## PLAINTIFF'S MOTION TO STRIKE DEFENDANTS' ANSWER AND BRIEF IN SUPPORT THEREOF

COMES NOW Plaintiff and files this Motion to Strike Defendants' Answer and Brief in Support Thereof, showing the court as follows:

## I.    INTRODUCTION

Plaintiff does not lightly seek a sanction as severe as striking Defendants' Answer, but the Defendants' egregious conduct in this case is deserving of nothing less than the ultimate sanction.  Plaintiff will show that Defendants fabricated critical evidence in this case.  The Courts of the Northern District of Georgia, as well as numerous Circuit Courts of Appeal, have recognized that the appropriate sanction for this type of misconduct is to strike Defendants' Answer.

This case arises out of a collision between the Plaintiff and the Defendants' tractor-trailer on February 5, 2007. Defendants initially produced vehicle inspection reports for the Defendants' tractor-trailer for ten days of operation between January 6, 2007 and February 2, 2007. At the eleventh hour near the close of discovery, Defendants produced what were represented to be Defendant Jackson's driver log books and vehicle inspection reports for February 5 and 6, 2007. The vehicle inspection reports were filled out on forms created and sold by J.J. Keller & Associates, Inc., a company that provides motor carriers with products and services to assist in their day-to-day operations.

The vehicle inspection reports initially produced by Defendant dated January 6, 2007 to February 2, 2007 are noticeably different from the February 5 and 6, 2007 vehicle inspection reports. A close inspection of these documents reveals that the vehicle inspection forms initially produced by Defendants in discovery bore J.J. Keller copyright dates of either 2000 or 2003. The February 5 and 6 inspection reports, however, contain a J.J. Keller copyright date of 2007. Plaintiff learned through subsequent investigation that J.J. Keller revised the 2003 vehicle inspection reports in July 2007. The July 2007 revision was not distributed for sale prior to August 16, 2007. Thus, it would have been impossible for Defendants to

have completed a vehicle inspection report on a J.J. Keller form bearing a 2007 copyright in February 2007, because that form did not exist at that time.

After discovering that the February 5 and 6 vehicle inspection reports could not have been created in February 2007, Plaintiff deposed Defendant Sunshine Recycling's 30(b)(6) representative, and one of its office managers, Donna Austin to determine if there was any explanation for this discrepancy. Defendants have failed to provide any explanation for producing critical documents dated February 5 and 6, 2007 on forms that did not exist until August 2007, nor is there any innocent explanation for their conduct. The inescapable conclusion is that Defendants intentionally fabricated evidence and in so doing, acted in bad faith and committed a fraud upon the Court. Plaintiff respectfully requests that the Court impose the ultimate sanction and strike Defendants' answer because no lesser sanction could adequately address the Defendants' egregious misconduct.[1]

## II.    STATEMENT OF FACTS

The collision at issue occurred on the early morning of February 5, 2007. Plaintiff was driving his tow truck west on Interstate 20 in Cobb County when he

---

[1] Plaintiff has no reason to believe that Defendants' counsel were in any way involved in the fabrication of evidence. In Plaintiff's counsels' observations, Defendants' counsel have acted courteously, ethically and professionally, both throughout the course of this litigation and in the course of other dealings with their law firm.

struck the rear of Defendant Sunshine Recycling's tractor-trailer, which was driven by Defendant Larry Jackson. (Pl.'s Compl. [Dkt. No. 1]). Plaintiff contends that the collision occurred, among other reasons, because Defendant Jackson was negligently traveling at an unsafe speed below the minimum speed limit without his four-way flashers activated in a negligently inspected and maintained vehicle. (*Id.*) Plaintiff further contends the rear of the flat-bed trailer was missing the proper federally required conspicuity tape, and that the rear trailer lights were either not functioning properly or were obscured by the load Defendants were hauling at the time. (*Id.*) It is important to note that Defendant's tractor was approximately seven years old, and the flat-bed trailer driven by Jackson was approximately 22 years old at the time of the collision. (Def. Jackson's Resp. to Pl.'s First Interrog., # 12, attached hereto as Exhibit "A"). Plaintiff suffered severe injuries as a result of the collision, including a broken hip that required surgery to repair.

On March 13, 2007, only weeks after the subject collision, Plaintiff's counsel sent letters to each Defendant and their insurance company requesting that they preserve evidence pertaining to Defendants, the subject tractor-trailer, and the subject collision. (March 13, 2007 Letters, collectively attached hereto as Exhibit "B"). Federal Motor Carrier Safety Administration ("FMCSA") regulations

required Defendants to prepare and retain most of the documents requested by Plaintiff.  Plaintiff's letter specifically requested that Defendants preserve Defendant Jackson's driver log books and daily vehicle inspection reports on the subject tractor trailer for the day of the collision and the eight days preceding the collision, and preserve all maintenance, inspection and repair records on the subject tractor-trailer for the six months prior to the collision.[2]  (Letters, collectively attached hereto as Exhibit "B").

Plaintiff filed suit on May 9, 2008.  Defendants initially failed to answer Plaintiff's lawsuit, and the Clerk made an entry of default on October 2, 2008.  Defendants' brief in support of their motion to open the default claimed that Defendant Sunshine had complied with all applicable state and federal motor carrier laws, and that Plaintiff would not suffer any prejudice as a result of opening the default "because Defendants have maintained all relevant evidence and records."  (Defs.' Brief in Support of their Motion to Set Aside Entry of Default and Default Judgment, pp. 10-11 [Dkt. No. 6-2]) (Emphasis supplied).  The Court

---

[2] Pursuant to FMCSR regulations, these records must be maintained by a motor carrier such as Defendant for "a period of 1 year and for 6 months after the motor vehicle leaves the motor carrier's control."  49 C.F.R. § 396.3(c) As such, Defendants should have possessed the records in March 2007 when Plaintiff wrote and requested that Defendants preserve them.

set aside the entry of default on March 17, 2009, and allowed Defendants to file their defensive pleadings. [Dkt. No. 16].

The case proceeded with discovery and on June 30, 2009, Plaintiff served Requests for Production of Documents on Defendants seeking, among other documents, the following:

- Defendant Larry Jackson's log books for the months of December, 2006, January, 2007 and February, 2007. (Pl.'s Request for Production of Documents, #7, attached hereto as Exhibit "C").

- All maintenance and repair records on the truck and trailer involved in this incident, including the vehicle maintenance file, daily vehicle condition reports or inspection reports, or any tangible evidence pertaining to the upkeep of the subject tractor and trailer. (*Id.* at Request # 10.)

- All policies or procedures regarding the inspection and maintenance of your truck and trailer and any inspection records for the truck and trailer involved in the subject incident. (*Id.* at Request # 13)

- Any and all documents in any way pertaining to Defendant Larry Jackson reflecting or regarding his driver log books, driver trip

reports, record of duty status or documents regarding the operation of

Defendant's equipment (*Id.* at Request # 14)

- Any and all documents required to be maintained by DOT/CFR

    regulations, or Georgia's motor vehicle laws, as it relates to Defendant

    Larry Jackson or the truck and trailer at issue. (*Id.* at Request # 15)

In their initial response to Plaintiff's first discovery requests, Defendants

failed to produce <u>any</u> driver log book entries for Larry Jackson, any maintenance

records for the subject tractor trailer, and only produced ten vehicle inspection

reports that were purportedly from January 6, 2007 through February 2, 2007,

several days before the incident at issue on February 5, 2007.[3] (*See* Vehicle

Inspection Reports, attached hereto collectively as Exhibit "D"). Defendants did

not produce <u>any</u> inspection records or driver log book entries for February 5 or 6,

2007 in response to Plaintiff's initial discovery requests.

Plaintiff deposed Defendant Larry Jackson and Joseph Rich, owner of

Defendant Sunshine Recycling, on August 17, 2009. Defendant Jackson testified

that he had signed each of the vehicle inspection reports initially produced by

Defendants, and claimed he completed a pre-trip inspection report and driver log

---

[3] Of these few inspection reports produced, several of them related to other tractor-trailers owned by Defendant Sunshine, and not the tractor trailer at issue. (See Ex. "D;" Dep. L. Jackson, attached hereto as Ex. "E," p. 154, ll. 4-15.)

books on the day of the collision, but had no explanation for Defendants' failure to produce these documents. (Ex. "E," p. 154, l. 4 through p. 156, l. 3). Although Joseph Rich admitted that the documents at issue were required to be maintained pursuant to FMCSA regulations, he had no explanation for the failure to produce the driver log books or vehicle inspection reports for the day of the subject collision. (Dep. J. Rich (August 17, 2009), p. 45, ll. 8-20, attached hereto as Exhibit "F"). In stark contrast to Defendants' prior representations to the Court that they complied with all applicable federal motor carrier laws and maintained all relevant evidence and records, Rich testified that the driver log books and vehicle inspection reports had not been produced because of "poor recordkeeping." *Id.*

On October 1, 2009, more than two and a half years after receiving Plaintiff's preservation of evidence letter, nearly a year and a half after litigation began and only two weeks prior to the close of discovery, Defendants produced what were purported to be "Mr. Jackson's driver logs and pre-inspection reports from February 5 and February 6, 2007." (Letter from Erica Parsons dated October 1, 2009, attached hereto as Exhibit "G;" Defs.' Supplemental Response to Plaintiff's First Request for Production of Documents, attached hereto as Exhibit "H"). The driver log and vehicle inspection reports for the day of the collision at issue contain information critical to this case, including Defendant Jackson's hours

of service leading up to the collision, and the condition of the lights and reflective tape (aka conspicuity tape) on the subject trailer.[4] (February 5-6, 2007 Driver Log Books, attached hereto as Exhibit "I;" Vehicle Inspection Reports, collectively attached hereto as Exhibit "J").

After receiving these documents "found" and produced by Defendants at the eleventh hour, Plaintiff took the depositions of Defendant Sunshine Recycling's office managers Robin Walker and Donna Austin on October 6, 2009. Austin testified that she recently found these four pages of records in a banker's box stored in one of Defendant Sunshine's buildings, and that the documents were in fact Larry Jackson's log books and inspection records from February 5 and 6, 2007. (Dep. D. Austin (October 6, 2009), p. 58, l. 10 through p. 60, l. 3; p. 62, ll. 9-23, attached hereto as Exhibit "K"). Austin claimed that, other than these four pages of critical documents, there were no other documents in the banker's box related to Defendant Jackson or requested in Plaintiff's preservation of evidence letter. (*Id.*, p. 62, ll. 9-16).

---

[4] In comparing the signature contained on the vehicle inspection reports and log books initially produced by Defendants, it appears that Defendant Jackson did in fact sign the February 5-6, 2007 log books and vehicle inspection reports.

All of the vehicle inspection records produced by Defendants were prepared on forms available from J.J. Keller & Associates, Inc. ("J.J. Keller").[5] While Plaintiff's counsel was meeting with Plaintiff's motor carrier expert Donald Hess[6] the morning of Mr. Hess' deposition on October 13, 2009, they happen to notice that the recently produced vehicle inspection forms were different from the handful of vehicle inspection forms previously produced by Defendants.  While all of the forms produced by Defendants earlier in discovery (those dated January 6, 2007 to February 2, 2007) bore either a 2000 or 2003 J.J. Keller copyright date, the February 5 and 6, 2007 vehicle inspection reports produced by Defendants bore a J.J. Keller copyright date of 2007.  Furthermore, the content of the newer forms was different from the earlier 2000 and 2003 copyrighted forms.  Mr. Hess called a

---

[5] As discussed on its website, JJ Keller is a company that provides motor carriers with products and services to run day-to-day operations.  *See* www.jjkeller.com

[6] Donald Hess is an expert in the trucking industry, with over 30 years in the business, including working as an over the road truck driver, and as an instructor teaching classes on all phases of truck driving.  Mr. Hess, who is currently the Director of Transportation and Public Safety Programs at John Wood Community College in Quincy, Illinois, has opined among other things that the Defendants' trailer did not have properly applied conspicuity tape, did not have a rear impact guard, and Defendant Jackson failed to activate his four-way flashers while his vehicle was moving slowly.  Mr. Hess opined that, given the lack of proper conspicuity tape combined with Jackson's failure to use four-way flashers while traveling at a slow speed, Plaintiff lacked the proper visual cues to identify Defendants' slow moving tractor trailer.  (Aff. D. Hess, attached hereto as Exhibit "L").

contact he knew at J.J. Keller, who informed him that the 2007 copyrighted J.J.

Keller form was not created until July, 2007, <u>more than six months after</u>

<u>Defendants claimed to have filled these forms out</u>.  Mr. Hess disclosed this

information to Defendants during his deposition later that day.[7]

Plaintiff investigated this matter further and subsequently made contact with

Daniel J. Werkmeister, Contracts Manager for J.J. Keller.  Mr. Werkmeister

provided Plaintiff with an Affidavit confirming that <u>the forms bearing the 2007</u>

<u>copyright date did not exist in February 2007.</u>  (Affidavit of Daniel J. Werkmeister,

attached hereto as Exhibit "M").  Mr. Werkmeister further confirmed that the 2007

version of the form was not revised until July 2007, and was not distributed for sale

by J.J. Keller until after August 16, 2007.  *Id.*  In other words, Plaintiffs have

obtained irrefutable evidence that it was <u>impossible</u> for Defendant Jackson to have

filled out the 2007 copyrighted J.J. Keller vehicle inspection forms in February 2007.

On October 20, 2009, after learning that the February 2007 vehicle inspection

forms had been fabricated, counsel for Plaintiff traveled back to Orangeburg, South

Carolina to re-depose Sunshine's office manager Donna Austin and owner Joseph

Rich, who testified that day as Defendant Sunshine Recycling's 30(b)(6)

---

[7] Mr. Hess' deposition has not been transcribed by the Court Reporter at this time.
Plaintiff will supplement his brief with Mr. Hess' deposition as soon as it is
received.

representative. Neither could provide an explanation for how Larry Jackson could have prepared his February 5 and 6, 2007 pre-trip inspection reports on forms that were not available until August 2007. (Dep. J. Rich (October 20, 2009), p. 21, l. 22 through p. 22, l. 6, attached hereto as Ex. "N"). In the face of irrefutable evidence to the contrary, Joseph Rich actually testified to his continued belief that the inspection reports were signed and submitted by Defendant Jackson in February 2007. (*Id.*, p. 25, l. 24 through p. 26, l. 3). Rich further testified that he discussed this issue with Defendant Jackson after learning that the vehicle inspection forms were not available in February 2007, and that Jackson had no explanation as to how that could have happened. (*Id.*, p. 26, l. 4 through p. 29, l. 6).

Larry Jackson's driver log book forms for February 5 and 6 are also subject to scrutiny, as they were allegedly found together with the falsified vehicle inspection reports. During her first deposition, Donna Austin was shown the February 5 and 6, 2007 vehicle inspection reports and log books and asked:

> Q:    These records, I'll tell you, have been represented to me to be Larry Jackson's log books from February 5 and February 6th, and his driver's inspection reports from February 5th and February 6th of 2007.
>
> A:    Yeah. That's his signature on everything.

Q:    Where did you find these?  Let me back up.  I understand from Robin

Walker's testimony that you're the one who found these.

A:    Going through  -- when I took over --

Q:    Is that correct, that you found these?

A:    Yes.  When I took over Lisa's stuff, desk drawer, cleaning out, putting

in a box, and it was misfiled through that box.

*** 

Q:    But you found these four documents in a box in what used to be Lisa's

office?

A:    No, no, no, not in the office itself now.  It was put in a box and the

box was stored somewhere else.

(Ex. "K," p. 58, l. 12 through p. 59, l. 14).

Ms. Austin was later asked if there was anything else in the box related to

the incident at issue:

Q:    Looking back at Plaintiff's Exhibit 26 [Plaintiff's March 13, 2007

Preservation of Evidence Letter to Defendants] that I showed you

earlier, was there anything else related to Larry Jackson – or Sunshine

that was requested in this letter, was there anything else in that box?

A:    No.

Q:    Just the two days of log books and two days of vehicle inspection

records?

A:    Yeah.  I guess it was filed wrong.

***

Q:    Okay.  And were these four pieces of paper all together?

A:    Yeah.

(Ex. "K," p. 62, l. 9 through p. 63, l. 15).

When confronted with Plaintiff's discovery of the falsified vehicle

inspection reports during her second deposition, Ms. Austin completely recanted

her previous testimony about finding Defendant Jackson's February 5 and 6 driver

log books.  Despite her previous testimony—taken just two weeks earlier—Ms.

Austin insisted she was not shown the log books during her first deposition, and

that she was not the person who found them.  (Dep. D. Austin (October 20, 2009),

p. 6, l. 1 through p. 8, l. 21, attached hereto as Ex. "O").

In short, the evidence demonstrates that the February 5 and 6, 2007 vehicle

inspection reports were falsified, produced to Plaintiff in discovery and represented

by Defendants to be the actual vehicle inspection reports prepared by Defendant

Jackson on those two dates.  Given that Defendant Jackson's driver log books for

February 5 and 6, 2007 were purportedly found with these vehicle inspection

reports, the authenticity of these documents is similarly suspect. This falsified

evidence—discovered by Plaintiff quite by chance—is critical to the essential

issues in this case, and Plaintiff respectfully requests that the Court sanction

Defendants' conduct, strike their answer, and enter a default judgment in favor of

Plaintiff.

## III.    ARGUMENT AND CITATION OF AUTHORITY

It is well settled that the trial court is vested with the power to sanction a

party for the fabrication of evidence. "A court may impose sanctions for litigation

misconduct under its inherent power." *Eagle Hospital, LLC v. SRG Consulting,*

*Inc.*, 561 F.3d 1298, 1306 (11th Cir. 2009) (Eagle Hospital II) "The key to

unlocking the court's inherent power is a finding of bad faith." *Id.* at 15 (*citing*

*Barnes v. Dalton*, 158 F3d 1212, 1214 (11th Cir. 1998). The use of inherent power

is authorized "to preserve the integrity of the judicial process and prevent the

perpetration of fraud on the court." *Eagle Hosp. Physicians, LLC v. SRG*

*Consulting, Inc.*, 2007 U.S. Dist. LEXIS 63242 at *8 (N.D. Ga. August 28, 2007)

(J. Forrester), *affirmed*, 561 F.3d 1298 (11th Cir. 2009) (Eagle Hospital I).

"A party demonstrates bad faith by, inter alia, delaying or disrupting the

litigation or hampering enforcement of a court order." *Eagle Hospital II, 561 F.3d*

*at* 1306 (*citing Byrne v. Nezhat, 261 F.3d 1075, 1103 (11th Cir. 2001)).* As Judge

Forrester observed, "[a]lthough the 11th Circuit touched upon the issue…the court never specifically addressed this issue as a "fraud upon the court." *Eagle Hospital I,* 2007 U.S. Dist. LEXIS at *8.  The First Circuit Court of Appeals, however, defined fraud on the court as "where it can be demonstrated, clearly and convincingly, that a party has sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system's ability to impartially adjudicate a matter by improperly influencing the trier or unfairly hampering the presentation of the opposing party's claim or defense." *Id.* *8-9 (*citing Aoude v. Mobil Corp.*, 892 F.2d 1115, 1118 (1st Cir. 1989)).  "Clear and convincing evidence merely requires proof that the claim is highly probable." *Tambourine Comercio International SA v. Solowsky*, 2009 U.S. App. LEXIS 3056 * 29 (11th Cir. Feb. 17, 2009).

### A. Defendants have acted in bad faith and attempted to perpetrate a fraud upon the Court.

There is clear and convincing evidence that Defendants have acted in bad faith and attempted to perpetrate a fraud upon the Court.  Defendants persuaded the Court to open default based in part upon their representations to the Court that they complied with all applicable state and federal motor carrier laws, and that Plaintiff would suffer no prejudice because Defendants had maintained all relevant evidence and records.  Contrary to these representations, the undisputed evidence

shows that Defendants failed to preserve numerous documents and records they were required to maintain pursuant to FMCSA regulations, and requested by Plaintiff to maintain in a preservation of evidence letter sent only weeks after this accident.

Moreover, nearly a year and a half after litigation commenced and only two weeks prior to the close of discovery, Defendants produced fabricated vehicle inspection reports and what are undoubtedly fabricated driver log books and represented that they were prepared on the day of the collision and next day thereafter. These documents contain information absolutely critical to this case, including Defendant Jackson's hours of service leading up to the collision and the condition of the trailer lights and conspicuity tape on the subject trailer. The testimony of J.J. Keller's Contracts Manager Dan Werkmeister conclusively proves that the vehicle inspection forms used by Defendants did not exist in February of 2007, and could not have been prepared until at least August 16, 2007, more than six months after Defendants represented these documents were prepared.

Even when provided an opportunity to explain how they created vehicle inspection reports on forms some six months before those forms existed, Defendants implausibly have refused to give any explanation at all, and have

maintained that the documents were prepared February 2007. In fact, Sunshine's office manager Donna Austin went so far as to recant her previous sworn testimony about finding Defendant Jackson's February 5-6, 2007 driver log books. Without question, Defendants' intentional conduct in offering fabricated evidence has delayed and disrupted the litigation, interfered with the judicial system's ability to impartially adjudicate this matter, and unfairly hampered the presentation of Plaintiff's claims. Defendants have accordingly acted in bad faith and attempted to perpetrate a fraud upon this Court, and the imposition of the ultimate sanction of striking their Answer is appropriate.

### B. Defendants' egregious and outrageous conduct is deserving of the ultimate sanction of striking their Answer.

Defendants have fabricated evidence related to critical issues in this case, and their outrageous conduct requires the ultimate sanction of striking their Answer and entering default judgment in Plaintiff's favor. In *Forsberg v. Pefanis,* 2009 U.S. Dist. LEXIS 92174 (N.D. Ga. October 2, 2009), Judge Forrester recently entered default against a defendant as a sanction for submitting a forged document in defense of a sexual harassment claim. Citing his earlier decision in *Eagle Hospital I*, Judge Forrester examined a number of earlier district court and circuit court of appeals opinions and held that "there is no adequate sanction short of striking of the answer to adequately address the issue of fabricated evidence."

*Id.*  *25; *See also Brady v. United States*, 877 F. Supp. 444, 453 (C.D. Ill. 1994)

("Permitting this lawsuit to proceed would be an open invitation to abuse the

judicial process.  Litigants would infer they have everything to gain, and nothing to

lose, if manufactured evidence is merely excluded while their lawsuit continues.").

Federal courts recognize that <u>the imposition of the ultimate sanction occurs most</u>

<u>frequently in cases where a party fabricates, destroys or alters evidence</u>.  *Chemtall,*

*Inc. v. CitiChem*, 992 F. Supp. 2d 1390, 1409 (S.D. Ga. 1998); *Quantum v.*

*Communications Corp.,* 473 F. Supp.2d 1249, 1269 (S.D. Fla. 2007) (inherent

sanctions "most often invoked when a party commits perjury or destroys or doctors

evidence").

Federal district courts have repeatedly imposed sanctions and struck

pleadings where there is evidence of the fabrication of evidence.  In *REP MCR*

*Realty LLC v. Lynch,* 363 F. Supp.2d 984 (N.D. Ill. 2005), *affirmed*, 2006 U.S.

App. LEXIS 19832 (7th Cir. July 19, 2006), the court dismissed the plaintiff's case

based on the plaintiff's fabrication of evidence.  In its order of dismissal, the court

stated:

> [The plaintiff's] production of the fabricated documents prejudiced his
>
> adversaries and the legal system generally. . . . The court considered
>
> the possibility of lesser sanctions – such as, perhaps, merely excluding

the faked documents while allowing [Defendants] to use them for

impeachment purposes – but such a sanction would be inadequate and

hollow.  The court agrees with the precedent finding that when a

litigant fabricates critical evidence, the interests of the judicial system

militate strongly in favor of dismissal of the suit so as to deter all

litigants from such misconduct in the future.

*REP MCR Realty LLC*, 363 F. Supp. 2d at 1011-1012.

Moreover, it is uniform in the federal courts that the trial court will exercise

its discretion to strike the pleadings of a party that has fabricated evidence relating

to a pivotal issue in the case.  *Johnese v. Jani-King,* 2008 U.S. Dist. LEXIS 16435

* 5-6 (N.D. Tex. March 3, 2008) (striking pleadings is "especially appropriate

where a party manufactures evidence which purports to corroborate its substantive

claims."); *Qantam Communications Corp.*, 473 F. Supp. 2d at 1269 ("Federal

courts have held that the need for sanctions is heightened when the misconduct

relates to the pivotal or 'linchpin' issue in the case" and such a nexus "militates

heavily in the sanction of default."); *McDowell v. Seaboard Farms of Athens, Inc.,*

1996 U.S. Dist LEXIS 19558 at * 23 (M.D. Fla. Nov. 4, 1996) ("When a party

fabricates evidence purporting to substantiate its claims, federal case law is well

established that dismissal is appropriate" and ultimate sanction was imposed

against party when fabricated evidence related to "the linchpin of his case");

*Vargas v. Peltz,* 901 F. Supp. 1572, 1580-81 (S.D. Fla. 1995) ("The federal law is

well established that dismissal [or default] is the appropriate sanction where a party

manufactures evidence which purports to corroborate its substantive claims" and

the sanction "is particularly appropriate" where the offending party's "fabricated

evidence undermines the theory of the case").

Accordingly, there are numerous decisions by federal courts in which a party

has been sanctioned by dismissal or default where, as here, the party has fabricated

evidence relating to a pivotal claim or fact in the case. *See e.g., McDowell* (court

imposed ultimate sanction after it found clear and convincing evidence to establish

that the plaintiff produced a purportedly contemporaneous diary citing

discriminatory events which had been fabricated during lawsuit); *Kojs v. Equifax*

*Credit Information Services,* 2004 U.S. Dist LEXIS 7948 (N.D. Ill. May 6, 2004)

(sanction imposed against party for submitting forged documents in support of

their claims); *Poppe v. Federal Express Corp.*, 138 F.R.D. 675 (W.D. Mo. 1990),

*affirmed in relevant part,* 974 F.2d 882 (8th Cir. 1992) (plaintiff's sexual

harassment claim dismissed for producing fabricated note containing sexual

comment from supervisor); *Sun World, Inc. v. Olvarria,* 144 F.R.D. 384, 390 (E.D.

Cal. 1992) (default judgment appropriate where plaintiff submitted a false

document); *Aoude v. Mobil Corp., supra* (ultimate sanction imposed on party who relied upon fabricated agreement); *Eppes v. Snowdon,* 656 F. Supp. 1267, 1279 (E.D. Ky. 1986) (default imposed where defendant committed fraud on the court by producing backdated letters).

In the case at bar, there is clear and convincing evidence that Defendants fabricated evidence and tried to pass it off to Plaintiff as authentic. The vehicle inspection reports, which contain information regarding the condition of the trailer lights and conspicuity tape, are absolutely critical evidence in the case. In fact, they go to the crux of Plaintiff's argument that Defendants were negligent in the inspection and maintenance of the subject tractor-trailer and that this negligence caused the Plaintiff's injuries. Defendants' outrageous conduct in this regard calls into question the authenticity of every document produced by Defendants and the testimony of their witnesses. For example, Plaintiff has no way of verifying the authenticity of the driver log books produced by Defendants with the fabricated inspection records.

Defendants produced documents to Plaintiff purporting to be the log books and vehicle inspection records prepared by Defendant Jackson on February 5 and 6, 2007. Defendants never disclosed that the documents were prepared at a later date. But for Plaintiff's investigation of the matter—which happened quite by

chance—Defendants' fabrication of the document would have never been discovered. Defendants should not be permitted to get away with such a "nothing to lose" approach to the litigation process. The mere exclusion of these documents at trial would ring hollow if Defendants were allowed to continue the defense of this case after proffering fabricated evidence. Under these circumstances, the only appropriate sanction is to strike Defendants' defensive pleadings and enter default judgment in favor of Plaintiff. As Judge Forrester recently concluded in *Forsberg* "there is no sanction short of striking of the answer to adequately address the issue of fabricated evidence." *Forsberg v. Pefanis,* 2009 U.S. Dist. LEXIS 92174 *25 (emphasis added).

## IV.    CONCLUSION

For the reasons set forth above, Plaintiff respectfully requests that the Court enter default judgment and an award of attorneys' fees and costs against Defendants as a sanction for their fabrication of evidence.

[Signatures on following page.]

RESPECTFULLY SUBMITTED this the 23rd day of October, 2009.

**EASTMAN & MYKKELTVEDT, P.C.**

/s/ Jeffrey N. Mykkeltvedt
Jeffrey N. Mykkeltvedt
Georgia Bar No. 533510
Davis K. Loftin
Georgia Bar No. 455713
Attorneys for Plaintiff

**EASTMAN & MYKKELTVEDT, P.C.**
881 Piedmont Avenue, Suite 100
Atlanta, Georgia 30309
(404) 477-2600-Office
(404) 745-0510-Facsimile

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that I have this day served a true and correct copy of the

foregoing ***Plaintiff's Brief in Support of Motion to Strike Defendants' Answer***

with the Clerk of Court using the CM/ECF system which will automatically send a

copy to the following:

Fred M. Valz, III, Esq.

Erica L. Parsons, Esq.

CARLOCK COPELAND & STAIR, LLP

2600 Marquis Two Tower

285 Peachtree Center Avenue

Atlanta, Georgia 30303

This 23rd day of October, 2009.

**EASTMAN & MYKKELTVEDT, P.C.**


/s/ Jeffrey N. Mykkeltvedt

Jeffrey N. Mykkeltvedt

Georgia Bar No. 533510