## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| BENJAMIN EDWARDS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action |
| vs. | ) | File No.: 1:08-CV-1693 |
| | ) | |
| SUNSHINE RECYCLING, LLC and | ) | |
| LARRY JACKSON, | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS' BRIEF IN SUPPORT OF THEIR MOTION FOR PARTIAL SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, MOTION TO CAP PUNITIVE DAMAGES

COME NOW Defendants Sunshine Recycling, LLC ("Sunshine") and Larry Jackson ("Jackson"), by and through the undersigned counsel, and submit this their Brief in Support of their Motion for Partial Summary Judgment or, in the alternative, Motion to Cap Punitive Damages, and shows the Court the following:

## INTRODUCTION

This case arises out of an automobile accident that occurred on Interstate 20 in Cobb County, Georgia on February 5, 2009, when Plaintiff drove his tow truck into and underneath the trailer of a tractor-trailer rig being operated by Sunshine's employee Larry Jackson. Plaintiff filed suit against Jackson alleging negligence in the operation of a commercial motor vehicle and against Sunshine pursuant to a

theory of respondeat superior.  Plaintiff also asserted claims of negligent hiring, retention, supervision and training as well as a claim of negligent entrustment against Sunshine.  Finally, Plaintiff contends that he is entitled to punitive damages in this case.

Because there is no genuine issue as to any material fact that would justify the imposition of punitive damages related to Plaintiff's negligence and respondeat superior claims against Jackson and Sunshine respectively, Defendants are entitled to judgment as a matter of law on this issue.  Likewise, because there is genuine issue as to any material fact with regard to Plaintiff's negligent entrustment, hiring, retention, training or supervision claims against Sunshine or that would justify the imposition of punitive damages related to these claims, Defendants are entitled to judgment as a matter of law thereon.

In the alternative, if the Court finds that a jury issue remains as to the issue of punitive damages in this case, such damages are capped at $250,000 as a matter of law.

## **STATEMENT OF FACTS**

I.    **The Subject Accident**

On February 4, 2007, Defendant Larry Jackson, who was an employee of Defendant Sunshine Recycling, LLC, left his house at approximately 11:30 p.m.

and drove a tractor pulling a step-deck trailer loaded with 2-inch angle iron beams to Cope, South Carolina to meet his companion driver, Keith Rich. (August 17, 2009 Deposition of Larry Jackson at 65, 74, 100; a true and accurate copy of relevant portions of Jackson's August Deposition is is included in Defendants' Supporting Excerpts as Exhibit "A."). Jackson was scheduled to deliver the load to Sunshine's customer in Iuka, Mississippi. (Ex. A at 28.) He completed a pre-trip inspection report and started a driver log. (Ex. A. at 84-85.) Jackson began driving the commercial route shortly after midnight on February 5, 2007. (Ex. A. at 74.)

Approximately thirty minutes into the trip, Jackson and Rich stopped at "a little turnout" in Williston, South Carolina to "tighten up all your binders, your straps or whatever" and perform a general inspection. (Deposition of Keith Rich at 33-34; a true and accurate copy of relevant portions of Keith Rich's Deposition is included in Defendants' Supporting Excerpts as Exhibit "B.") They stopped again an hour and a half to two hours later at a truck stop off at Exit 172 off of Interstate 20 in Thomson, Georgia to fill out their log books and perform an inspection of the vehicles again and then continued along I-20 westbound until the accident occurred. (Ex. B at 35; Ex. A at 85.) Following this stop, Rich and Jackson continued along I-20 westbound until the accident occurred.

At approximately 4:30 a.m, Jackson was an was traveling westbound on I-20 in Cobb County, Georgia. (Complaint, ¶¶ 7-8.) At the same date and time, Plaintiff was traveling in the same lane of traffic in a Ford F-450 tow truck with a vehicle in tow. (Complaint, ¶ 7.) Defendant Jackson was approximately halfway up a hill just past the intersection of I-20 and Six Flags Parkway when he suddenly felt what he thought was the transmission exploding. (Ex. A at 101-102, 109.) He radioed his companion driver Keith Rich, who was in another tractor-trailer just ahead, and advised him that he "thought the transmission had blown." (Ex. A at 101-102.) Jackson looked in his rearview mirror and saw sparks and smoke and realized that he had been hit. (Ex. A at 102.) Both Defendant Jackson and Mr. Rich pulled their rigs onto the shoulder of the road and got out of their respective cabs. (Ex. A at 103; Ex. B at 43.) As Defendant Jackson walked to the back of the rig, he saw Plaintiff's tow truck pinned underneath the trailer. (Ex. A at 103-104.) He approached the tow truck and asked whether Plaintiff was injured. (Ex. A at 103.) Plaintiff responded that he was "hurt pretty good," and Defendant Jackson called 911 to advise of the accident and to request that medical personnel come to the scene. (Ex. A. at 103.)

When police arrived on the scene of the accident, they interviewed Defendant Jackson and Mr. Rich. (Ex. A at 126-127; Ex. B at 47-48.) The officer

issued Plaintiff a citation for the subject accident.  (Deposition of Benjamin Edwards at 38; a true and accurate copy of relevant portions of Edwards's Deposition are is included in Defendants' Supporting Excerpts  as Exhibit "C.")

Plaintiff did not see Jackson's vehicle before running into and underneath the trailer. (Ex. C at 37.)  However, Plaintiff's passenger at the time of the accident, Jason Phillips, testified that immediately prior to impact, he glanced up and saw Jackson's tractor-trailer three to four car lengths ahead, observed the functioning taillights and testified that the tractor-trailer was fully established in their lane of traffic.  (Deposition of Jason Phillips at 21; a true and accurate copy of Phillips's Deposition is is included in Defendants' Supporting Excerpts  as Exhibit "D.")  He also testified that Plaintiff was traveling 70 to 75 miles per hour at the time of impact and that he did not feel the tow truck swerve or brake before the impact. (Ex. D at 22, 28.)  Though Phillips testified that he glanced up, saw the tractor-trailer, "closed [his] eyes and started praying," he, nevertheless, contends that in this narrow time frame, he was able to observe *flat* steel beams (Jackson was hauling 2-ing angle iron) extending beyond the rear of the trailer, which he contends partially obscured the lights, and to estimate the speed of Jackson's vehicle to be between 35 and 40 miles per hour based on the fact that "he was

going very much slower than everybody else, you know. That's just a guess." (Ex. D at 23, 26-28.)

## II.    <u>Defendant Jackson's Employment With Defendant Sunshine.</u>

Defendant Jackson has continually maintained a commercial driver's license since 1964. (Ex. A at 6.) His commercial driver's license has never been suspended or revoked. (Ex. A at 6.) Prior to working for Sunshine, he owned and operated Susanville Recycling and Towing, an automobile wrecking yard, recycling center and towing business in Susanville, California for twenty years and A&A Towing in San Jose, California for six years before that. (Ex. A at 15-16.) During the 20 years he owned and operated Susanville Recycling and Towing, Jackson was issued a DOT number and effectively was his own motor carrier. (Ex. A at 18.) Prior to the date of the subject accident, Jackson had never received a citation or been involved in an accident while operating a commercial motor vehicle. ((Ex. A at 61.)

Jackson completed a pre-employment application and was hired to worked for Sunshine from about January 2007 to October 2007. (Ex. A. at 34; October 28 Deposition of Larry Jackson at 6; a true and accurate copy of relevant portions of Walker's October Deposition is included in Defendants' Supporting Excerpts as Exhibit "E.") His job duties consisted of driving commercial trucks as well as

working in the recycling yard.  (Ex. A. at 24, 155.)  Part of his duties as a commercial truck driver included performing vehicle inspections of the commercial vehicles he was driving, preparing vehicle inspection reports, and maintaining driver log books for his trips.  (Ex. A. at 85.)

### III.   The Instant Lawsuit

Plaintiff filed suit against Defendants Jackson and Sunshine seeking damages for injuries he sustained allegedly as a result of the subject accident. With respect to Sunshine, Plaintiff asserts two distinct theories of liability: 1) Sunshine is liable for the negligence of Jackson under the theory of respondeat superior; and 2) Sunshine is liable for negligently hiring, retaining, and/or supervising Jackson.  Defendants admit that Jackson was acting in the course and scope of his employment for Sunshine at the time of the underlying incident. (Answer, ¶ 21.)  Plaintiff has also asserted a claim for punitive damages against both Defendants.  (Complaint, ¶¶ 31, 33).

Plaintiff alleges that Defendants have "fabricated" documents and spoliated evidence.  (*See generally* Plaintiff's Motion to Strike Defendants' Answer and Brief in Support Thereof.)  Defendants concede that due to "poor record-keeping" they have been unable to locate some original documents that Plaintiff contends are or may be relevant to the issues in this case, specifically the original pre-trip

inspection reports for February 5 and February 6, 2007.  (August 17, 2009 Deposition of Joseph Rich at 45; relevant portions of Rich Deposition is included in Defendants' Supporting Excerpts  as Exhibit "E.")  However, Defendant Jackson explained during his second deposition the unusual circumstances surrounding the creation of the pre-trip inspection reports at issue.  (October 28, 2009 Deposition of Larry Jackson, *passim*; a true and accurate copy of relevant portions of the Jackson's October Deposition is is included in Defendants' Supporting Excerpts  as Exhibit "F.")  Specifically, Jackson testified

> Q.    Let me show you what was marked earlier as Plaintiff's Exhibit Number 29.  There's two pages there -- and we didn't have the benefit of those at your first deposition.  Do you recognize those documents?
> A.    Yes.  They are vehicle inspection reports.
> Q.    All right.  Can you tell me when those were signed?
> A.    These were -- the originals were signed in February of '07.  These I had copied from carbon copies out of the original book, and I don't know exactly when I did these.
> Q.    All right.  So when you say the originals, there -- this is not a copy of the original; is that what you're saying?
> A.    It's a re-copy of the original. (3:22 - 4:8)
> . . . .
> A.    They asked me -- and when I say they, I think it was Robin [Walker] but I am not sure -- if I knew where the inspection reports and logs were.  No, I don't know where they are at.  And would I try to help find them.  Sure.  So I know me and Robin dug through boxes and boxes of stuff.  And then I had the idea of going out to the trucks and looking through the trucks for the duplicate books. (7:8-14)
> . . . .

A.  I found several of [the duplicate books], yeah.  I took them into the back room or the break room or whatever and sat down and started going through them.  And I found this book. (8:5-7)

. . . .

A.  There wasn't anybody [in Sunshine's business office] that day.  I did the two copies and I took them in -- and I was going to give them to Robin or Donna or whatever the other girl's name was there.  And there wasn't anybody there . . . So I just laid them on the desk in the center office.  And I left all the books -- and there was probably ten, twelve books that I brought in -- I left them laying on the picnic table in the back room.  (8:14-21)

. . . .

Q.  So it's your testimony then that you looked at the carbon and re-copied that information on to the new form?

A.  Yes.  (9:13-15)

. . . .

Q.  Do you know how long it was after you left that you had this opportunity when you were back at Sunshine to do -- to re-copy the inspection records?

A.  I'd just be guessing.  Sometime in January or February.

Q.  Of 2008?

A.  Of '08, yeah.  (9:24-10:5.)

(Ex. E.)

## ARGUMENT AND CITATION OF AUTHORITIES

Defendants are entitled to judgment as a matter of law as to Plaintiff's claims for punitive damages related to the alleged negligence of Defendant Jackson, and the derivative negligence of Sunshine, in Jackson's operation of the tractor-trailer because there is no evidence that Jackson's actions in operating the subject vehicle were willful, malicious, fraudulent, wanton, oppressive or done with such an entire want of care so as to raise the presumption of conscious indifference to the

consequences.   Furthermore, Plaintiff has failed to satisfy the requisite elements of his claims for negligent entrustment hiring, retention, training, and supervision against Sunshine and has failed to present evidence sufficient to warrant a charge on punitive damages with respect to this claim.   Accordingly, this Court should grant Defendants' Motion for Partial Summary Judgment in this regard.

Alternatively, if this Court finds that a jury issue exists with regard to Plaintiff's claims for punitive damages, such damages are subject to the statutorily imposed cap of $250,000.00 because Plaintiffs have failed to present any evidence that Defendants' allegedly tortious actions were committed with the specific intent to injure Plaintiff.

## I.    <u>Summary Judgment Standard</u>

Summary judgment is appropriate where no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56.  Pursuant to a shifting burden, the movant must demonstrate that there is "an absence of evidence to support the non-moving party's case."  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 325 (1986).  Where this initial burden is met, the onus shifts to the non-moving party to demonstrate the existence of a genuine issue as to facts material to the dispute.  <u>Clark v. Coats & Clark</u>, 929 F.2d 604, 608 (11th Cir. 1991).  Specifically, the party opposing summary judgment must then "go beyond

the pleadings," presenting admissible evidence in the form of affidavits, depositions, admissions and the like, tending to establish "specific facts showing that there is a genuine issue for trial." Celotex, 477 U.S. at 324.  In short, "[i]f the evidence supporting plaintiff's claims is insufficient for a jury to return a plaintiff's verdict, or is merely colorable or not significantly probative, then defendant is entitled to summary judgment." Murphy v. Yellowstone Freight System, 832 F. Supp. 1543, 1547 (N.D. Ga. 1993) (citing Anderson, 477 U.S. at 249).

Because this is a diversity case,  Georgia law governs the substantive issues, including the viability of Plaintiff's claims for punitive damages and the negligent entrustment, hiring, retention, training and supervision claims.  Wammock v. Celotex, 835 F.2d, 818 (11th Cir. 1988).

## II.    Plaintiff Is Not Entitled To Punitive Damages Related To The Allegedly Negligent Operation Of The Tractor-Trailer.

In automobile collision cases, "punitive damages are not recoverable where the driver at fault simply violated a rule of the road." *Miller v. Crumbley,* 249 Ga.App. 403, 405(3), 548 S.E.2d 657 (2001), quoting *Carter v. Spells,* 229 Ga.App. 441, 442, 494 S.E.2d 279 (1997); accord *Fowler v. Smith,* 237 Ga.App. 841, 843(2), 516 S.E.2d 845 (1999).  Rather, to justify punitive damages, Georgia law requires that the collision result "from a pattern or policy of dangerous driving, such as driving while intoxicated or speeding excessively." *Brooks v. Gray,* 262

-11-

Ga. App. 232, 233 (2003), citing *Miller,* supra, 249 Ga. App. at 405(3); see *Carter,*

supra, 229 Ga. App. at 442.

In the instant case, Plaintiff has failed to produce clear and convincing

evidence that the subject accident is attributable to fault on the part of Defendant

Jackson, and he has certainly not proven by clear and convincing evidence that the

subject accident resulted from a pattern or policy of Jackson's dangerous driving.

In fact, the evidence demonstrates that Plaintiff collided with the rear of Jackson's

vehicle and received a citation from the responding officer for the subject accident.

Moreover, prior to the subject accident, Defendant Jackson had never received a

citation or been involved in a collision while operating a commercial motor

vehicle. (Ex. A. at 61.)   Accordingly, Plaintiff is not entitled to punitive damages

against Defendant Jackson.

Defendant Sunshine is likewise entitled to judgment as a matter of law as to

Plaintiff's claims for punitive damages related to Jackson's operation of the tractor-

trailer.   Sunshine's liability, if any, for such damages is purely derivate of

Defendant Jackson's liability for punitive damages.   *J.B. Hunt Transport, Inc. v.*

*Bentley,* 207 Ga. App. 250, 254 (1992) (explaining that employer may be subject

to derivative liability for punitive damages assessed as a result of actions taken by

an employee in the scope of employment).   As set forth in the above, Defendant

Jackson is entitled to judgment as matter of law as to Plaintiff's claims for punitive damages. Accordingly, Defendant Sunshine has no derivative liability for punitive damages and this Court should grants Defendants' Motion for Partial Summary Judgment in that regard.

**III.    Because Defendant Jackson Was Competent And Qualified To Operate The Subject Tractor-Trailer, Plaintiff's Claims For Negligent Hiring, Retention, Training, Supervision and Entrustment  Fail As A Matter Of Law.**

In order to substantiate a claim for negligent entrustment, a plaintiff must show that the allegedly negligent party entrusted someone with an instrumentality, with *actual knowledge* that the person to whom he has entrusted the instrumentality is incompetent by reason of his age or inexperience, or his physical or mental condition, or his known habit of recklessness. *Williams v. Ngo*, 289 Ga. App. 44 (2007). Similarly, to prevail on a claim of negligent hiring/retention, a plaintiff must show that the employer "knew or should have known the employee was not suited for the particular employment." *Western Indus., Inc. v. Poole*, 280 Ga. App. 378, 381-82 (citation and emphasis omitted).

Here, however, there is no evidence that Jackson was incompetent to operate the tractor-trailer or that he was not suited for employment as a commercial truck driver, and thus there can be no evidence of actual knowledge of such incompetence on the part of Sunshine. Instead, the evidence clearly proves that

Jackson was both competent and qualified to work as a commercial truck driver. Defendant Jackson has continually maintained a commercial driver's license since 1964. (Ex. A at 6.) His commercial driver's license has never been suspended or revoked. (Ex. A at 6.) Prior to working for Sunshine, he owned and operated Susanville Recycling and & Towing, automobile wrecking yard, recycling center and towing business in Susanville, California for twenty years and A&A Towing in San Jose, California for six years before that. (Ex. A at 15-16.) During the 20 years he owned and operated Susanville Recycling and Towing, Jackson was issued a DOT number and effectively was his own motor carrier. (Ex. A at 18.) Prior to the date of the subject accident, Jackson had never received a citation or been involved in an accident while operating a commercial motor vehicle. ((Ex. A at 61.)

As the above facts clearly demonstrate, Jackson was competent and qualified to operate the tractor-trailer at the time Sunshine entrusted it to him. Accordingly, Plaintiff's claim for negligent hiring, retention, training, entrustment against Sunshine fails as a matter of law.

**IV.    Plaintiff Is Not Entitled To Punitive Damages Against Defendant Sunshine Related To Plaintiff's Claims Of Negligent Hiring, Retention, Training, Supervision and Entrustment,**

There is insufficient evidence to support an award of punitive damages regarding Plaintiff's negligent hiring, retention, training, and entrustment claims. Georgia's punitive damages statute states,

> Punitive damages may be awarded only in such tort actions in which it is proven by clear and convincing evidence that the defendant's actions showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to the consequences.

O.C.G.A. § 51-12-5.1(b).  Something more than the mere commission of a tort is always required for punitive damages.  *Colonial Pipeline v. Brown*, 258 Ga. 115 (1998).  Negligence, *even gross negligence*, is not sufficient to support an award of punitive damages.  *Id.*  Georgia courts have defined "willful misconduct," such as would give rise to a presumption of conscious indifference to the consequences, as the intentional doing of a wrongful act with the substantial certainty that the injury of some nature will result.   Rossville Apts. Co. v. Britton, 178 Ga. App. 194 (1986).

In the instant case, there is no evidence that Defendants willfully, malicious, fraudulently, wantonly, oppressively, or acted with conscious indifference to inflict any injury upon the Plaintiff.  Of late, Plaintiff has alleged that Defendants

"spoliated evidence" and "fabricated" documents, specifically Jackson's February 5 and February 6, 2007 pre-trip inspection reports. (*See generally* Plaintiff's Motion to Strike Defendants' Answer and Brief In Support Thereof.) However, this allegation, which is specious at best, is belied by the actual evidence in this case. In his deposition on October 28, 2009, Jackson explained why the pre-trip inspection reports appear to be written on forms that did not exist at the time of the subject accident -- because he recopied the information from the carbon copies of the original onto clean forms in early 2008. (Ex. E at 6.) Defendants concede that they have not been able to locate the original forms or carbon copies and attribute the failure to poor record-keeping in the past. (Ex. F at 15.) However, even if Sunshine's poor record-keeping amounted to gross negligence, which Defendants deny, such actions still do not establish that Defendants willfully, maliciously, fraudulently, wantonly, oppressively, or, with conscious indifference, acted to cause injury to Plaintiff.

Because Plaintiff has failed to present clear and convincing evidence that Sunshine's actions "showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to the consequences," Plaintiff's claim for punitive damages

related to Plaintiff's negligent hiring, retention, training, and entrustment claims fail as a matter of law.

## V.    Assuming Arguendo That A Jury Issue Exists As To Punitive Damages, Such Damages Are Capped At $250,000 As A Matter Of Law.

Pursuant to O.C.G.A. § 51-12-5.1(g), punitive damages are limited to a maximum of $250,000 for any tort action, unless there is a determination that "the Defendant acted, or failed to act, with the specific intent to cause harm."  *See,* O.C.G.A. § 51-12-5.1(f).   "Intent," is defined in Restatement, Torts 2d, § 8A (1965) "to denote that the actor desires to cause consequences of his act, or that he believes that the consequences are substantially certain to result from it.  On the other hand, the mere knowledge and appreciation of a risk, short of a substantial certainty, is not the equivalent of intent.  *Eubanks v. Nation-wide Insurance Company* , 195 Ga. App. 359, 364(4), 393 S.E.2d 452 (1990)," *J. B. Hunt Transport, Inc. v. Bentley*, 207 Ga. App. 250 (1993).  If Plaintiff is entitled to punitive damages in this case, which Defendants expressly deny, then damages must be capped.

In *Bentley*, Lutter, who was an employee of Defendant J. B. Hunt, was involved an automobile accident when his truck collided with the Plaintiff's parked car.  Lutter had been driving erratically for 10 to 20 miles before to the accident, swinging from left to right, going well into the emergency lane, across the solid

white line, and then veering back to the left across the center white broken line. *Id.* at 251. The plaintiff was parked in the emergency lane in a construction zone when Lutter veered to the left and then back to the right, striking Bentley's pickup truck. *Id.* The evidence established that Lutter did not slow down when he entered the construction area. *Id.* There was also evidence that the company driver log had been destroyed, even though J. B. Hunt had retained an investigator in anticipation of litigation regarding the accident, and that J. B. Hunt's drivers had a history of repeated violations of the federal driving time limitations, though there was no direct evidence that Lutter was violating the time limitations when the accident occurred. *Id.* at 252. At trial, the jury awarded the plaintiff $1,250,000 in punitive damages against Lutter and $250,001.00 in punitive damages against Hunt. *Id.* On appeal, however, the court held that punitive damages should have been capped for both Lutter and Hunt at $250,000.00 because there was no evidence that the defendants acted with specific intent to cause harm. *Id.* at 254.

Here, as in *Bentley,* there is no evidence that the Defendants specifically intended to harm Plaintiff. Accordingly, any award of punitive damages must be capped at $250,000.00 as a matter of law.

## <u>CONCLUSION</u>

For the foregoing reasons, Defendants respectfully request that this Court grant their Motion for Partial Summary Judgment, or, in the alternative, enter an Order directing that punitive damages, if any, are capped at $250,000.00.

Respectfully submitted, this <u>4th</u> day of November, 2009.

CARLOCK, COPELAND & STAIR, LLP

By:    /s/ Erica L. Parsons
       FRED M. VALZ
       State Bar No.: 723379
       ERICA L. PARSONS
       State Bar No.: 100152
       Attorneys for Defendants

2600 Marquis Two Tower
285 Peachtree Center Avenue
Atlanta, Georgia  30303
404-522-8220
        ..........
P.O. Box 56887
Atlanta, Georgia  30343

<u>CERTIFICATE OF COMPLIANCE WITH LR 5.1</u>

Undersigned counsel of record for Defendants hereby certifies that the foregoing brief has been prepared using Times New Roman font, 14 point, as approved by the Court in LR 5.1B.

CARLOCK, COPELAND & STAIR, LLP

By:    /s/ Erica L. Parsons
       FRED M. VALZ
       State Bar No.: 723379
       ERICA L. PARSONS
       State Bar No.: 100152
       Attorneys for Defendants

2600 Marquis Two Tower
285 Peachtree Center Avenue
Atlanta, Georgia  30303
404-522-8220
        ..........
P.O. Box 56887
Atlanta, Georgia  30343

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have this day served a copy of the within and foregoing pleading upon all parties to this matter by means of electronic delivery using the CM/ECF electronic filing service addressed to counsel of record as follows:

Jeffrey N. Mykkeltvedt, Esq.
Davis K. Loftin, Esq.
Eastman & Mykkeltvedt, P.C.
881 Piedmont Avenue, N.E.
Suite 100
Atlanta, GA  30309
Email:  jeff@eastman-law.com

This <u>4th</u> day of November, 2009.

/s/ Erica L. Parsons
ERICA L. PARSONS
State Bar No.: 100152
*Attorney for Defendants*

Carlock, Copeland & Stair, LLP
P.O. Box 56887
Atlanta, Georgia  30303
404-522-8220
..........
P.O. Box 56887
Atlanta, Georgia  30303

2804009v.1