IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| BENJAMIN EDWARDS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Civil Action |
| vs. | ) File No.: 1:08-CV-1693 |
| | ) |
| SUNSHINE RECYCLING, LLC and | ) |
| LARRY JACKSON, | ) |
| | ) |
| Defendants. | ) |

### DEFENDANTS' BRIEF IN OPPOSITION TO
### PLAINTIFF'S MOTION TO STRIKE DEFENDANTS' ANSWER

COME NOW Defendants Sunshine Recycling, LLC ("Sunshine") and Larry Jackson ("Jackson"), by and through undersigned counsel of record for Defendants, and submit this their Brief in Opposition to Plaintiff's Motion to Strike Defendants' Answer, showing the Court as follows:

### INTRODUCTION

Plaintiff's Motion to Strike Defendants' Answer is premised upon two pre-trip reports that Plaintiff speciously alleges were fabricated.  While Defendants concede that they have been unable to locate the original documents, despite extensive and diligent searches, Defendants adamantly deny that they have fabricated or intentionally destroyed any relevant documents.  As striking

Defendants' answer would be a drastic and inappropriate sanction under the circumstances, Defendants respectfully request that this Court deny Plaintiff's Motion to Strike.

## STATEMENT OF FACTS

### I.   The Subject Accident

On February 4, 2007, Defendant Larry Jackson, who was an employee of Defendant Sunshine Recycling, LLC, left his house at approximately 11:30 p.m. and drove a tractor pulling a step-deck trailer loaded with 2-inch angle iron beams to Cope, South Carolina to meet his companion driver, Keith Rich. (August 17, 2009 Deposition of Larry Jackson at 65, 74, 100; a true and accurate copy of relevant portions of Jackson's August Deposition is attached hereto as Exhibit "A."). Jackson was scheduled to deliver the load to Sunshine's customer in Iuka, Mississippi. (Ex. A at 28.) He completed a pre-trip inspection report and started a driver log. (Ex. A. at 84-85.) Jackson began driving the commercial route shortly after midnight on February 5, 2007. (Ex. A. at 74.)

Approximately thirty minutes into the trip, Jackson and Rich stopped at "a little turnout" in Williston, South Carolina to "tighten up all your binders, your straps or whatever" and perform a general inspection. (Deposition of Keith Rich at 33-34; a true and accurate copy of relevant portions of Keith Rich's Deposition is

attached hereto as Exhibit "B.") They stopped again an hour and a half to two hours later at a truck stop off at Exit 172 off of Interstate 20 in Thomson, Georgia to fill out their log books and perform an inspection of the vehicles again and then continued along I-20 westbound until the accident occurred. (Ex. A at 85; Ex. B at 35.)

At approximately 4:30 a.m, Jackson was traveling westbound on I- 20 in Cobb County, Georgia. (Complaint, ¶¶ 7-8.) At the same date and time, Plaintiff was traveling in the same lane of traffic in a Ford F-450 tow truck with a vehicle in tow. (Complaint, ¶ 7.) Defendant Jackson was approximately halfway up a hill just past the intersection of I-20 and Six Flags Parkway when he suddenly felt what he thought was the transmission exploding. (Ex. A at 101-102, 109.) He radioed his companion driver Keith Rich, who was in another tractor-trailer just ahead, and advised him that he "thought the transmission had blown." (Ex. A at 101-102.) Jackson looked in his rearview mirror and saw sparks and smoke and realized that he had been hit. (Ex. A at 102.) Both Defendant Jackson and Mr. Rich pulled their rigs onto the shoulder of the road and got out of their respective cabs. (Ex. A at 103; Ex. B at 43.) As Defendant Jackson walked to the back of the rig, he saw Plaintiff's tow truck pinned underneath the trailer. (Ex. A at 103-104.)    He approached the tow truck and asked whether Plaintiff was injured. (Ex. A. at 103.)

Plaintiff responded that he was "hurt pretty good," and Defendant Jackson called 911 to advise of the accident and to request that medical personnel come to the scene. (Ex. A. at 103.)

When police arrived on the scene of the accident, they interviewed Defendant Jackson and Mr. Rich. (Ex. A at 126-127; Ex. B at 47-48.) The officer issued Plaintiff a citation for the subject accident. (Deposition of Benjamin Edwards at 38; a true and accurate copy of relevant portions of Edwards's Deposition is attached hereto as Exhibit "C.")

Plaintiff did not see Jackson's vehicle before running into and underneath the trailer. (Ex. C at 37.) However, Plaintiff's passenger at the time of the accident, Jason Phillips, testified that immediately prior to impact, he glanced up and saw Jackson's tractor-trailer three to four car lengths ahead, observed the functioning taillights and testified that the tractor-trailer was fully established in their lane of traffic. (Deposition of Jason Phillips at 21; a true and accurate copy of Phillips's Deposition is attached hereto as Exhibit "D.") He also testified that Plaintiff was traveling 70 to 75 miles per hour at the time of impact and that he did not feel the tow truck swerve or brake before the impact. (Ex. D at 22, 28.) Though Phillips testified that he glanced up, saw the tractor-trailer, "closed [his] eyes and started praying," he, nevertheless, contends that in this narrow time frame, he was able to

observe *flat* steel beams (Jackson was hauling 2-inch angle iron) extending beyond the rear of the trailer, which he contends partially obscured the lights, and to estimate the speed of Jackson's vehicle to be between 35 and 40 miles per hour based on the fact that "he was going very much slower than everybody else, you know. That's just a guess." (Ex. D at 23, 26-28.)

Following the subject accident, Jackson turned in his original pre-trip inspection reports and driver's logs to Sunshine. (Ex. A at 150, 156; October 28, 2009 Deposition of Larry Jackson at 4; a true and accurate copy of relevant portions of the Jackson's October Deposition is included in Defendants' Supporting Excerpts as Exhibit "E.")

## II.     Sunshine's Business Operations

Sunshine is a small recycling company engaged in the business of purchasing, transporting and reselling steel and other materials. (August 17, 2009 Deposition of Joseph Rich at 18; a true and accurate copy of relevant portions of Rich Deposition is attached hereto as Exhibit "F.") With regard to the business administration, no single person is responsible for any particular task but rather "everybody works everywhere and tries to do everything that they can." (Ex. F at 46.) At the time of the subject accident, "anyone that was in office at the time that [vehicle inspection records] were turned in," would have been responsible for

keeping said records. (October 20, 2009 Deposition of Joseph Rich at 44; a true and accurate copy of relevant portions of Rich's October 20, 2009 deposition is attached hereto as Exhibit "G.")

### III. The Instant Lawsuit

Plaintiff filed suit against Defendants Jackson and Sunshine seeking damages for injuries he sustained allegedly as a result of the subject accident. After an extensive On October 1, 2009, Defendants Plaintiff alleges that Defendants have "fabricated" documents and spoliated evidence. (*See generally* Plaintiff's Motion to Strike Defendants' Answer and Brief in Support Thereof.)

Pursuant to Plaintiff's discovery requests, Sunshine attempted to locate all documents in its possession that were responsive to said requests. (October 6, 2009 Deposition of Donna Austin at 58-59; a true and accurate copy of relevant portions of Austin's October 6, 2009 deposition attached hereto as Exhibit "H"; October 6, 2009 deposition of Robin Walker at 30; a true and accurate copy of relevant portions of Walker's October 6, 2009 deposition attached hereto as Exhibit "I.") Ms. Walker and Ms. Austin conducted an exhaustive and extensive search of numerous boxes of records. (Ex. I at 30, "We had been looking through oodles and oodles of things trying to find, you know, anything because we've had so many hands on paperwork and stuff like that. So we were just going through everything

that we could find.")  Unfortunately, since the date of the subject accident, the boxes in which Sunshine's records are stored have been moved, more than once, to different locations.  (Ex. I at 31.)  Moreover, some boxes were damaged by water and by rats and their contents had to be discarded.  (Ex. I at 34, 48.)  Finally, some records were inadvertently discarded by Joe Rich's uncle when he cleaned out a cabinet to store safety supplies.  (October 28, 2009 Deposition of Robin Walker at 20; a true and accurate copy of relevant portions of Walker's October 28, 2009 Deposition is attached hereto as Exhibit "J".)  Defendants concede that due to these issues and "poor record-keeping," they have been unable to locate some original documents that Plaintiff contends are or may be relevant to the issues in this case, specifically the original pre-trip inspection reports for February 5 and February 6, 2007.  (Ex. F at 45.)  However, none of Sunshine's records, relevant to the instant action, was intentionally destroyed nor would anyone at Sunshine have directed that documents be destroyed or fabricated.  (Ex. J at 12, 29; October 20, 2009 Deposition of Donna Austin at 13-14; a true and accurate copy of relevant portions of Austin's October 20, 2009 deposition is attached hereto as Exhibit "K.")

In late September 2009, Ms. Austin finally located pre-trip inspection reports dated February 5 and February 6, 2007, which had been misfiled in a box of documents that had been stored in a desk drawer by its previous occupant.  (Ex.

K at 4, 6-7.)  Upon further investigation, Ms. Walker located the driver logs for February 5 and February 6, 2007 in the same box.  (Ex. J at 12.)  Counsel for Defendants immediately produced these records to counsel for Plaintiff on October 1, 2009.

During his deposition, Plaintiff's expert opined that the February 5 and February 6, 2007 pre-trip inspection reports had been prepared on forms that would not have been available to Jackson until August 2007.  (Deposition of Donald Hess at 56; a true and accurate copy of relevant portions of Hess's deposition is attached hereto as Exhibit "L.")  As this was the first counsel for Defendants had heard of this issue, and in hopes of resolving the discrepancy, Defendants offered to make Joe Rich, Larry Jackson, Donna Austin, and Robin Walker available for re-deposition with regard to the limited issue of the pre-trip inspection reports, and Plaintiff accepted, noticing the depositions for October 20, 2009.  (*See* Plaintiff's Notices of Deposition, Docket Nos. 39 and 40.)  Due to a scheduling conflict on the part of Defendant Jackson and illness of Ms. Walker's infant child, Plaintiff agreed to postpone their depositions to October 28, 2009.  (*See* Plaintiff's Notices of Deposition, Docket Nos. 43 and 44.)  Plaintiff, nevertheless, filed his Motion to Strike Defendants' Answer on October 23, 2009, without waiting for the very information sought to be obtained in the course of these depositions.

During his second deposition, Defendant Jackson explained the unusual circumstances surrounding the creation of the pre-trip inspection reports at issue. (Ex. E, *passim*.)  Specifically, Jackson testified

> Q. Let me show you what was marked earlier as Plaintiff's Exhibit Number 29.  There's two pages there -- and we didn't have the benefit of those at your first deposition.  Do you recognize those documents?
> A. Yes.  They are vehicle inspection reports.
> Q. All right.  Can you tell me when those were signed?
> A. These were -- the originals were signed in February of '07.  These I had copied from carbon copies out of the original book, and I don't know exactly when I did these.
> Q. All right.  So when you say the originals, there -- this is not a copy of the original; is that what you're saying?
> A. It's a re-copy of the original. (3:22 - 4:8)
>
> . . . .
>
> A. They asked me -- and when I say they, I think it was Robin [Walker] but I am not sure -- if I knew where the inspection reports and logs were.  No, I don't know where they are at.  And would I try to help find them.  Sure.  So I know me and Robin dug through boxes and boxes of stuff.  And then I had the idea of going out to the trucks and looking through the trucks for the duplicate books. (7:8-14)
>
> . . . .
>
> A. I found several of [the duplicate books], yeah.  I took them into the back room or the break room or whatever and sat down and started going through them.  And I found this book. (8:5-7)
>
> . . . .
>
> A. There wasn't anybody [in Sunshine's business office] that day.  I did the two copies and I took them in -- and I was going to give them to Robin or Donna or whatever the other girl's name was there.  And there wasn't anybody there . . . So I just laid them on the desk in the center office.  And I left all the books -- and there was probably ten, twelve books that I brought in -- I left them laying on the picnic table in the back room.  (8:14-21)

>. . . .
>Q. So it's your testimony then that you looked at the carbon and re-copied that information on to the new form?
>A. Yes. (9:13-15)
>. . . .
>Q. Do you know how long it was after you left that you had this opportunity when you were back at Sunshine to do -- to re-copy the inspection records?
>A. I'd just be guessing. Sometime in January or February.
>Q. Of 2008?
>A. Of '08, yeah. (9:24-10:5.)

(Ex. E.)

### ARGUMENT AND CITATION OF AUTHORITY

This Court should deny Plaintiff's Motion to Strike Defendants' Answer. While a court may impose sanctions for litigation misconduct under its inherent power, such power "must be exercised with restraint and discretion." *Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.*, 561 F.3d 1298, 1306 (11th Cir. 2009). Sanctions as drastic as striking a party's answer are only appropriate where the moving party demonstrates, by clear and convincing evidence, that the non-movant has delayed or disrupted the litigation or hampered enforcement of a court order. *Id.* "The dismissal of a party's complaint or answer, or striking its defenses, as a sanction ... is a heavy punishment, appropriate only as a last resort, when less drastic sanctions would not ensure compliance with the court's orders." *Forsberg v. Pefanis*, 2009 WL 3229368, 5 (Oct. 9, 2009, N.D.Ga.)

In the instant case, the best that Plaintiff can prove is that Sunshine's record-keeping efforts have been less than meticulous and that Defendants have been unable to locate the original February 5 and February 6, 2007 pre-trip inspection reports; however, Defendants have not delayed or disrupted the litigation process nor have they perpetrated any fraud upon this Court. Accordingly, this Court should deny Plaintiff's Motion to Strike Defendants' Answer.

## I.     **<u>Defendants Have Not Perpetrated Any Fraud Upon This Court.</u>**

Contrary to Plaintiff's assertion, Defendants have not perpetrated any fraud upon this Court. Although Plaintiff attempts to take issue with Sunshine's failure to produce documents requested in a March 13, 2007 preservation of evidence letter (impliedly assuming that such documents ever existed or were required to be in existence in the first place)[1], at its heart, Plaintiff's Motion to Strike Defendants' Answer is premised upon the February 5 and February 6, 2007 pre-trip inspection reports and the fact that, at the time Plaintiff filed his Motion to Strike, no one was

---

[1] While Plaintiff alleges that Defendants failed to produce maintenance records, driver logs and other documents requested in the course of discovery (to which many of these requests Defendants properly objected and Plaintiff did not seek to compel the production of any such documents), Plaintiff has not alleged that he has suffered any prejudice as a result of Sunshine's failure to produce any documents other than the February 5 and February 6, 2007 pre-trip inspection reports. Indeed, as reflected on Page 3 of Plaintiff's Motion and Breif, the Motion to strike is premised wholly upon Defendants' alleged fabrication of documents. Accordingly, the only documents that this Court should fairly consider are the February 5 and February 6, 2007 pre-trip inspection reports.

able to explain why these reports appeared on forms that were not available until August 2007; however, as Plaintiff discovered mere days after filing this Motion, the reason that no one at Sunshine had any knowledge of or explanation for this discrepancy is simple -- Jackson had re-copied the information contained in the original forms onto new forms in early 2008, , unbeknownst to anyone at Sunshine.

    Jackson prepared inspection reports and driver logs for February 5 and February 6, 2007 on February 5 and February 6, 2007 respectively and turned them into Sunshine at the end of the trip. (Ex. A at 150.) After leaving the company in October 2007, Jackson learned that Sunshine had been unable to locate these items, (Ex. E at 6, 8.) While at Sunshine one day in early 2008, Jackson searched the cabs of several Sunshine trucks and found the books containing the carbon copies. (Ex. E at 8.) He then proceeded to copy the information contained on the carbon copies onto clean forms and left the re-copied forms on a desk in Sunshine's office and the carbon copy books on a picnic table in the back room. (Ex. E at 8-10.) No one was in Sunshine's office at the time Jackson re-copied the reports and he did not have a conversation with anyone about recopying the documents. (Ex. E at 8; Ex. J at 8.) In fact, had Sunshine been aware that Jackson had located the carbon copies, Ms. Walker would have simply made "Xerox" copies of the same and placed them in her files. (Ex. J at 11.) Unfortunately, Jackson did not think of

photocopying the carbon copy because he thought Sunshine wanted the "white copy." (Ex. E at 5, 9.)

Defendant Sunshine maintained the vehicle inspection reports dated February 5 and February 6, 2007 and produced those records to Plaintiff immediately upon their discovery. Neither Joe Rich nor Donna Austin knew, or had reason to know, that the reports, as produced, were recopied from the originals onto clean forms in early 2008. Accordingly, neither Rich nor Austin were able to provide this explanation were they were deposed on October 20, 2008. This does not, however, support Plaintiff's specious conclusion that these documents were "fabricated" nor does it support Plaintiff's contention that Defendants' Answer should be stricken. Accordingly, this Court should deny Plaintiff's Motion to Strike.

## II. Defendants' Conduct In No Way Justifies Sanctioning, Much Less Striking Of Defendants' Answer.

Defendants concede that owing to unfortunate circumstances related to the storage of documents and to "poor record-keeping" on the part of Sunshine, they have been unable to locate the original pre-trip inspection reports prepared by Jackson on February 5 and February 6, 2009; however, Defendants have not fabricated documents in this case. Plaintiff's conclusory allegation to that effect is

insufficient evidence to support the imposition of sanctions, much less a sanction as drastic as striking Defendants' Answer.

In support of his Motion, Plaintiff relies on this Court's recent decision in *Forsberg v. Pefanis*, 2009 WL 3229368 (N.D. Ga, Oct. 9, 2009.) However, the facts of this case are easily distinguishable from those of *Forsberg* and, thus, do not support the imposition of sanctions here. In *Forsberg*, the plaintiff asserted a cause of action for sexual harassment and claimed that her employer had touched her inappropriately and made disparaging comments about her in the presence of other employees. *Id.* at *1. In defense against the claims, the employer proferred evidence that two employees would testify that they had never witnessed the alleged incident and submitted a signed statement purportedly on behalf of one of the employees. *Id.* However, in preparation for trial, plaintiff located the employee who purportedly signed the statement. *Id.* The employee made two declarations for Plaintiff, one in which he affirmed that he had seen the alleged incident and one in which he denied having signed the statement bearing his name and purported signature. *Id.* In fact, the employee declared that the co-owners of the business expressly told him he needed to sign the typewritten statement and implied that his continued employment was contingent upon signing. *Id.* The employee testified that he refused to sign the statement and did not know who

signed it. *Id.* A forensic expert retained by Plaintiff testified that the signature on the statement was not that of the subject employee. *Id.* Based on the evidence presented, the Court concluded that signature on the statement was not that of the employee and ordered that Defendants' Answer be stricken.

In the instant case, Defendants have cooperated with and acted in good faith toward Plaintiff at every stage of litigation. Defendants produced the subject pre-trip inspection reports to Plaintiff immediately upon discovery of the same, notably five days <u>before</u> the first depositions of Robin Walker and Donna Austin. When a discrepancy was noted with the documents, Defendants agreed to allow Plaintiff to re-depose Joe Rich, Donna Austin, Robin Walker and Larry Jackson at Plaintiff's counsel's earliest convenience. During his second deposition, Defendant Jackson provided a clear and concise explanation for how the February 5 and February 6, 2007 pre-trip inspection reports came to be prepared on forms that did not exist until August 2007 -- specifically, that he had recopied the information from the original carbon copies onto clean forms. He confirmed that the signatures on the documents were his and that he did not tell anyone at Sunshine that he had re-copied the information from the carbon copies onto a clean form after doing so. (Ex. E at 8-10.) Unlike the employer in *Forsberg*, no one at Sunshine did or would have instructed Jackson to re-copy the information or to fabricate documents. (Ex.

G at 29; Ex. J at 10-11; Ex. K at 13-14.) There is absolutely no evidence, and certainly not clear and convincing evidence, that these documents were created at any time, in any manner or for any purpose other than that to which Jackson testified.

Moreover, there is no evidence that Defendants actually destroyed any documents relevant to the instant action. Defendants concede that they have not been able to locate the original pre-trip inspection reports and that some documents in Sunshine's possession had been destroyed by water intrusion, vermin or the inadvertent acts of Joe Rich's uncle; however, that concession does not amount to a positive admission that Defendants destroyed these, or any other, documents relevant to the subject accident. Accordingly, Plaintiff has failed to meet his burden of producing clear and convincing evidence that Defendants acted in bad faith by allegedly destroying relevant documents and Plaintiff's Motion to Strike Defendants' Answer should be denied.

**III. Even Assuming *Arguendo* That Sunshine's Failure To Locate The Subject Reports Justifies Sanctions, There Are Lesser Sanctions Which Would Be More Appropriate Under The Circumstances.**

Defendants adamantly deny that Plaintiff is entitled to any sanctions whatsoever in this case because the pre-trip inspection reports that are the foundation for Plaintiff's Motion were not fabricated; however, even assuming

-16-

*arguendo* that Plaintiff were entitled to sanctions, there are less drastic measures that this Court can employ to remedy any alleged prejudice caused to Plaintiff by Defendants' failure to preserve, locate and produce the original February 5 and February 6, 2007 pre-trip inspection reports.

"Spoliation refers to the destruction or failure to preserve evidence that is necessary to contemplated or pending litigation." *Silman v. Associates Bellemeade*, 2009 WL 3334630, 2 (Ga., Oct. 23, 2009). Apart from striking a party's pleadings, which is a drastic sanction of last resort, lesser potential sanctions are available to remedy any prejudice resulting from the spoliation of evidence include a jury charge that spoliation of evidence creates the rebuttable presumption that the evidence would have been harmful to the spoliator or the exclusion of testimony about the evidence. *Kelley v. Blue Line Carriers, LLC* 2009 WL 3401984, 2 (Ga. App., Oct. 23, 2009).

At best, the evidence Plaintiff has put forth suggests that Defendants may have been negligent in failing to preserve evidence, namely the original pre-trip inspection reports, that was necessary to contemplated litigation. The information contained in those reports, as reflected in the re-copied versions, supports Defendants' contentions that the trailer's taillights were functioning and that the trailer was, in all other respects, compliant with Department of Transportation

regulations. Because Defendants have been unable to locate and produce the original documents, however, then Plaintiff may be entitled to a jury instruction regarding spoliation of evidence or to the exclusion of Defendants' testimony regarding these reports. Under the circumstances, these lesser sanctions, if any, would be far more appropriate than the dismissal of Defendants' Answer.

## **CONCLUSION**

Because Plaintiff has failed to produce clear and convincing evidence in support of his conclusory allegation that Defendants destroyed or fabricated evidence, Defendants respectfully request that this Court deny Plaintiff's Motion to Strike Defendants' Answer.

[SIGNATURE APPEARS ON THE FOLLOWING PAGE]

Respectfully submitted, this 9th day of November, 2009.

        CARLOCK, COPELAND & STAIR, LLP

By:  /s/ Erica L. Parsons
      FRED M. VALZ
      State Bar No.: 723379
      fvalz@carlockcopeland.com
      ERICA L. PARSONS
      State Bar No.: 100152
      eparsons@carlockcopeland.com
      *Attorneys for Defendants*

2600 Marquis Two Tower
285 Peachtree Center Avenue
Atlanta, Georgia  30303
404-522-8220
    ..........
P.O. Box 56887
Atlanta, Georgia  30343

# CERTIFICATE OF SERVICE

I hereby certify that I have this day served a copy of the within and foregoing pleading upon all parties to this matter by means of electronic delivery using the CM/ECF electronic filing service addressed to counsel of record as follows:

Jeffrey N. Mykkeltvedt, Esq.
Davis K. Loftin, Esq.
Eastman & Mykkeltvedt, P.C.
881 Piedmont Avenue, N.E.
Suite 100
Atlanta, GA  30309
Email:  jeff@eastman-law.com

This 9th day of November, 2009.

/s/ Erica L. Parsons
ERICA L. PARSONS
State Bar No.: 100152
eparsons@carlockcopeland.com
*Attorney for Defendants*

Carlock, Copeland & Stair, LLP
P.O. Box 56887
Atlanta, Georgia  30303
404-522-8220
    ..........
P.O. Box 56887
Atlanta, Georgia  30303

2809782v.1