IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| BENJAMIN EDWARDS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | CIVIL ACTION FILE |
| v. ) | NO. 1:08-CV-1693-WSD |
| ) | |
| SUNSHINE RECYCLING, LLC, ) | |
| and LARRY JACKSON, ) | |
| ) | |
| Defendants. ) | |

**PLAINTIFF'S REPLY BRIEF IN SUPPORT OF
MOTION TO STRIKE DEFENDANTS' ANSWER**

COMES NOW Plaintiff and files this Reply Brief in Support of his Motion to Strike Defendants' Answer, showing the court as follows:

In their response to Plaintiff's Motion to Strike, Defendants Larry Jackson and Sunshine Recycling, LLC ("Sunshine") offer what can only be described as an incredible story to explain how documents critical to Plaintiff's case were fabricated and produced by Defendants as authentic. Much like the vehicle inspection records that are at the center of Plaintiff's Motion to Strike, Defendants' explanation for the creation of the documents is fabricated. It was only after Plaintiff presented indisputable evidence that the February 5-6 vehicle inspection reports that Defendants produced as authentic <u>could not have been created on those dates</u> that Defendants explained how these critical documents happened to be

"recopied" sometime in 2008.  Defendants' response also ignores the fact that even assuming Larry Jackson—a party defendant—innocently recopied the documents, <u>he knew he did so but Defendants nonetheless failed to disclose this information until after the documents were produced in discovery as authentic</u>.  The vehicle inspection reports are critical to Plaintiff's case, and Defendants' egregious conduct must be met with the ultimate sanction.

**A. <u>Defendants' explanation for their fabrication of critical documents is not credible.</u>**

Defendants' explanation for how critical documents were fabricated and produced in discovery is not credible for two reasons.  First, Defendants failed to disclose any irregularity with the vehicle inspection records until <u>after</u> Plaintiff proved the fabrication.  Second, the explanation is not credible because of the ever-shifting, contradictory testimony offered by Defendants throughout the course of this case.

**1. Defendants Failed to Disclose Any Irregularity With the Inspection Records Until After Plaintiff Discovered the Fabrication.**

Defendants had multiple opportunities throughout the course of discovery to explain that the February 5-6 vehicle inspection records had been "recopied" by Defendant Jackson.  Defendants, however, only provided this explanation after Plaintiff proved beyond dispute that these vehicle inspection reports were not authentic.  When the Defendants produced the documents in question, two weeks

2

prior to the close of discovery, they represented them to be <u>authentic</u>, representing that they were "Mr. Jackson's driver logs and pre-inspection reports from February 5 and February 6, 2007." (Letter from Erica Parsons dated October 1, 2009, Pl.'s Mtn. to Strike, Ex. "G"[1]; Defs.' Supplemental Response to Plaintiff's First Request for Production of Documents, Pl.'s Mtn. to Strike, Ex. "H").

Critically, prior to the time Plaintiff filed his Motion to Strike, Defendant Jackson <u>never</u> disclosed that he had recopied the February 5-6 vehicle inspection records. During his first deposition on August 17, 2009, Defendant Jackson was specifically asked if he knew why his vehicle inspection reports from the date of the incident had not been produced in discovery and his response was "no." (Dep. L. Jackson (August 17, 2009), p. 154, l. 19 through p. 155, l. 1, attached hereto as Ex. "1"). In fact, Defendant Jackson testified that the only thing he ever did with regard to locating records was to give the March 13, 2007 preservation of evidence letter to Defendant Sunshine. (*Id.*, p. 156. l. 14-19). Jackson never disclosed during his first deposition, as he does now, that he: (1) went to Sunshine's facility months after he quit working for them; (2) scoured through multiple of Defendants' tractor-trailers looking for vehicle inspection books; (3) found and then, for some reason, recopied two days of vehicle inspection records that happened to be the two days critical to this case; and (4) left carbon copies of the

---

[1] When referencing exhibits previously attached to his Motion to Strike, Plaintiff shall cite them as follows: "Pl.'s Mtn. to Strike, Ex. "___""

3

authentic vehicle inspection records on a picnic table at Defendants' facility. (Defs.' Resp. Brief, p. 9-10).

Defendants only offered this incredible story <u>after</u> Plaintiff proved beyond dispute that the February 5-6 vehicle inspection reports were not authentic. It is thus clear that Defendants' "explanation" is nothing more than a post hoc attempt to explain away their intentional fabrication of critical documents, and Plaintiff's Motion to Strike should be granted.

### 2. Defendants' explanation is contradicted by their own testimony.

In addition to being offered only after Plaintiff proved the February 5-6 vehicle inspection reports could not have been created at that time, Defendants' explanation for manufacturing evidence is contradicted by their own testimony. Just eight days before Defendant Jackson testified that the documents were "recopied," Defendant Sunshine's owner and corporate representative Joseph Rich testified that when he was told that the records were fabricated, he asked Defendant Jackson how that could have happened. According to Rich, <u>Jackson said that he did not know.</u> (Dep. J. Rich (October 20, 2009), p. 26, l. 4 through p. 29, l. 6, attached hereto as Ex. "2"). Rich further testified that after speaking to Defendant Jackson and either Robin Walker or Donna Austin or both, there was no explanation for how the fabricated vehicle inspection records had been created. (*Id.*, p. 30 ll. 2-21). <u>In other words, as of October 20, 2009, Defendants had no</u>

<u>explanation for how the subject vehicle inspection reports had been filled out on forms that did not exist.</u>  It was not until Plaintiff filed his Motion to Strike, including the affidavit of Daniel Werkmeister that proved beyond dispute that Defendants' explanation was not possible, that Defendants provided <u>any</u> <u>explanation</u> for their conduct.

Given this contradictory testimony, it is obvious that Plaintiff's Motion to Strike—filed between the October 20, 2009 deposition of Joseph Rich and the October 28, 2009 deposition of Larry Jackson—forced Defendants to concoct this new story to cover up their fabrication of the vehicle inspection reports. Defendants' explanation for the fabricated reports, offered only after their misconduct was exposed, is contradicted by their own testimony, and Plaintiff's Motion to Strike should be granted.

### 3. Defendants' have offered contradictory testimony throughout the course of this litigation.

Defendants have offered other contradictory testimony regarding their recordkeeping and the purported late "discovery" of the February 5-6, 2007 vehicle inspection reports and log books, further demonstrating why their explanation is not credible.  Defendants have concocted a variety of excuses for their failure to produce records and their fabrication of documents, and the most recent is the disclosure of Joseph Rich's Uncle, Brian Rich.

5

Robin Walker testified that sometime between April or May 2008 and October 2009 Brian Rich, cleaned out a cabinet and threw away Sunshine's log books. (Dep. R. Walker (October 28, 2009), p. 20, l. 12 through p. 21, l. 21, attached hereto as Ex. "3"). This testimony of course provides a convenient explanation for why Defendants cannot produce the original carbon copy of the February 5 and 6 inspection reports Larry Jackson claims to have recopied. It does not, however, explain why Defendants disclosed this information for the first time more than 2 ½ years after the incident at issue, well after the close of discovery, and during the eighth and final deposition of Defendants and their employees.

As set forth in Plaintiff's Motion to Strike, Defendants represented to this Court that Plaintiff would not suffer any prejudice if the default was opened "<u>because Defendants have maintained all relevant evidence and records.</u>" (Defs.' Brief in Support of their Motion to Set Aside Entry of Default and Default Judgment, pp. 10-11 [Dkt. No. 6-2]) (Emphasis supplied). Defendants' testimony regarding the purported disposal of documents proves that this representation was not true.

Defendants' witnesses also gave conflicting testimony regarding how they finally managed to find the critical inspection reports and log books just prior to the close of discovery. During their first depositions, both Robin Walker and Donna Austin testified that Donna Austin was the person who found the February

5-6, 2007 vehicle inspection reports and log books (Dep. R. Walker (October 6, 2009), p. 29, l. 17 through p. 30, l. 8, attached hereto as Ex. "4"; Dep. D. Austin (October 6, 2009), p. 62, l. 9 through p. 63, l. 15, attached hereto as Ex. "5"). During her second deposition, however, Ms. Austin insisted that she had only found the two pages of vehicle inspection records, and had no knowledge of the log book records. (Dep. D. Austin (October 20, 2009), p. 6, l. 1 through p. 8, l. 21, attached hereto as Ex. "6"). Critically, Ms. Austin testified that when she found the inspection records, she searched through the box and there was nothing else pertaining to the collision at issue in the box. (*Id.*, p. 14, l. 24 through p. 15, l. 1). Ms. Austin further explained that "[a]fter you found one, you go back through and double check. But there wasn't anything else," not even a fax cover sheet to the insurance company. (*Id.* at p. 15, ll. 1-9).

Just eight days after Ms. Austin's second deposition, Robin Walker changed her prior testimony and claimed that <u>she found the two pages of log book entries</u>. Walker testified that she found those log book records because she had more time to go back through the same box where Donna Austin found the inspection records. (Dep. R. Walker (October 28, 2009), p. 12, l. 13 through p. 13, l. 17).

As evidenced by the fabricated documents, excuses and contradictory testimony, Defendants have made a concerted effort to "hide the ball" throughout

7

discovery and have frustrated Plaintiff's efforts to conduct discovery in this case.[2]

The prejudice suffered by Plaintiff is clear – the fabrication of evidence, missing documents, and conflicting testimony have obscured the truth to the point where Plaintiff cannot determine the veracity of any document produced or testimony given by Defendants and their witnesses.

**B. Defendants are both responsible for offering fabricated evidence and attempting to perpetrate a fraud upon this Court.**

Defendants claim that "no one at Sunshine had any knowledge" that Defendant Jackson had recopied the vehicle inspection forms. (Defs.' Resp. Brief, p. 12). Defendants' claims, however, are contradicted by Defendant Jackson's

---

[2] Yet another example of Defendants' failure to disclose the whole truth concerned Defendants' failure to fully identify and disclose their former employee Lisa Jackson. Lisa Jackson was not identified in Defendants' initial disclosures or discovery responses, but began to figure prominently in this case after Robin Walker testified that Ms. Jackson was responsible: (1) for Defendant Sunshine's compliance with the FMCSA regulations at the time of the collision at issue; (2) for gathering all of the records pertaining to the collision from Larry Jackson; and (3) for searching for records in response to Plaintiff's March 13, 2007 evidence preservation letter. (Dep. R. Walker (October 6, 2009), p. 19, l. 16 through p. 20, l. 12; p. 40, l. 9-23; p. 42, l. 20 through p. 46, l. 3). According to Walker, Lisa Jackson quit Sunshine Recycling around December 2007. Walker testified that Lisa Jackson had "left the state" and she claimed to have no idea where Lisa was today. (*Id.*, p. 50, l. 11-14).

Plaintiff retained a private investigator to locate Ms. Jackson and learned that she was living in Arkansas with her husband, Larry Jackson, Jr., the son of Defendant Larry Jackson. Joseph Rich initially denied knowing anybody who might know the whereabouts of Ms. Jackson. (Dep. J. Rich (October 20, 2009), p. 48, l. 11-24). Rich later admitted, however, that he knew Lisa Jackson was Defendant Larry Jackson's daughter-in-law. (*Id.*, p. 66, l. 10-19).

8

testimony. According to Jackson, the decision to recopy the records "was just kind of a collective thing." (Dep. L. Jackson (Oct. 28, 2009), p 13, ll. 19-24, attached hereto as Ex. "7"). When asked to explain this further, Jackson testified as follows:

> Q: All right. And when you say a collective thing, who was involved in that collective thing?
>
> A: I'm sure it was me and probably Robin. Maybe Donna, but I don't think Donna was there.

(*Id.*, p. 14 ll. 1-4)

> Q: Did you ever tell anybody at Sunshine that you had re-copied the records and not found the originals?
>
> A: I don't remember just walking up and telling somebody, no.
>
> Q: But that was the idea of the -- that was the gist of the conversation, you said, <u>the collective decision amongst you and Robin was that you would re-copy them; is that correct</u>?
>
> A: <u>Yes</u>.
>
> Q: So Robin, as far as you know, Robin would have known that the white pages now that you had left on her desk were not the original ones from February 2007?
>
> A: Yes.

9

(*Id.*, p. 16 ll. 17-24) (emphasis added).

Moreover, as <u>Larry Jackson is a party defendant represented by the same counsel</u>, it is disingenuous for these Defendants to claim Sunshine had no knowledge that Jackson recopied the inspection records.  Defendants and their counsel have an ongoing obligation to the Court to verify the factual and legal basis of <u>Defendants' position</u> in this case.  *See Chemtall Inc. v. Citi-Chem, Inc.*, 992 F. Supp. 1390, 1409 n. 21 (S.D. Ga. 1998).  If Larry Jackson knew that these records were not authentic, then he was obligated to disclose that information.  Defendants failed to do so and their production of these documents to Plaintiff and subsequent fictional explanations are a fraud upon the Court justifying the imposition of the ultimate sanction.

**C. The fabricated records are critical, material evidence in the case, and the only appropriate sanction is to strike Defendants' Answer.**

There is no question that the fabricated documents constitute critical, material evidence in the case, and Defendants' Response makes no attempt to claim otherwise.  <u>Indeed, the February 5, 2007 vehicle inspection report is the only document showing the condition of the vehicle on the day of the collision.</u>  Despite their obligations to the Federal Motor Carrier Safety Administration and the preservation of evidence letter sent by Plaintiff within weeks of the collision, Defendants failed to preserve or produce any other documents regarding the

condition of the tractor-trailer, such as periodic inspection reports or mechanical and repair records.

Defendants' claim that Plaintiff has suffered no prejudice rings hollow in light of their fabrication of evidence. In *Chemtall Inc. v. Citi-Chem, Inc.*, 992 F. Supp. 1390 (S.D. Ga. 1998), Judge Edenfield concisely described the prejudice inflicted upon a party where the opposing party fabricates evidence:

> Those who lie, evade and fail to tell the whole truth obviously enjoy an advantage over honest litigants. The victimized opponent winds up, as in this case, consuming substantial resources to respond to and "undo" the victimizer's lies and distortions. Here plaintiffs did just that by resorting to third party discovery, then confronting [Defendants] with contradictory documents, and even his own testimonial contradictions. … In the meantime, the Court itself is prevented from actually reaching the merits of the case -- as well as resolving other cases -- by having to stop and, as it has done here, exhaustively examine what is, at bottom, sanctionable perjury and fraud upon the Court.

*Id.* at 1409-10.

Here, Defendants have frustrated Plaintiff's discovery efforts at every turn and have forced Plaintiff to conduct time-consuming, costly discovery—including obtaining Daniel Werkmeister's Affidavit and traveling to Orangeburg, South Carolina (twice) to take four additional depositions—to uncover the whole truth. <u>Even if Defendant Jackson's incredible story of re-copying the inspection records is to be believed, Defendants cannot—and indeed do not—dispute that the vehicle inspection reports produced were not prepared until long after February 5-6, 2007</u>.

Moreover, Defendants' alleged recordkeeping incompetence cannot excuse Defendants' failure to meet their obligation to preserve and maintain documents critical to this litigation.

Given the Defendants' outrageous conduct, the only appropriate sanction is the entry of a default in favor of Plaintiff. In *Vargas v. Peltz*, 901 F. Supp. 1572 (S.D. Fla. 1995), the district court dealt with a similar situation with regard to the fabrication of evidence. There, the plaintiff filed a sexual harassment suit against her former employer. During her deposition, the plaintiff testified that the defendant Peltz gave her a pair of women's panties in September 1992, and asked her to pose for pictures in the panties. The plaintiff actually produced the subject panties from her purse during the deposition. *Id.* at 1574.

Similar to the case at bar, an investigation revealed the particular style of underwear produced by plaintiff was not sold until after November 10, 1993. *Id.* at 1575. Based on such evidence, the Court found "that Plaintiff lied and presented false evidence when she introduced the women's panties at her May 24, 1994 deposition." *Id.* The District Court dismissed the plaintiff's lawsuit based on the plaintiff's "intentional misconduct in presenting false evidence in support of her claims." *Id.* at 1579.

In support of its dismissal of the plaintiff's action, the *Vargas* Court relied upon *Pope v. Federal Express Corp.*, 138 F.R.D. 675 (W.D. Mo. 1990), *aff'd in*

*relevant part*, 974 F.2d 982 (8th Cir. 1992). In *Pope*, the evidence revealed that the plaintiff fabricated a handwritten note, lied about the note in her deposition, and made false references to the note in various discovery responses and pleadings filed with the Court. *Pope*, 138 F.R.D. at 681. The Court imposed sanctions, finding

> Clear and convincing evidence has been presented that plaintiff knowingly advanced a document which she knew was not what she represented it to be, and that she relied upon it in her pleadings. She repeatedly attempted to promote the use of the document on her behalf in this litigation, even though she knew it was manufactured. She acted in bad faith and with improper purpose in a manner which jeopardizes the integrity of the judicial system.

*Id.* at 683.

In the present case, there is clear and convincing evidence that Defendants knew that the February 5-6 vehicle inspection records were fabricated, but nonetheless produced the documents to Plaintiff as authentic. These documents, which are the only documents that show the condition of Defendants' vehicle on the day of the accident, are absolutely critical to Plaintiff's case. As in *Pope*, *Vargas*, and the case law cited in Plaintiff's Motion to Strike, Defendants' conduct in this case should be met with the ultimate sanction.

## IV.   CONCLUSION

For the reasons set forth herein and in Plaintiff's Motion to Strike and Brief in Support, Plaintiff respectfully requests that the Court enter a default in favor of

Plaintiff, award Plaintiff his attorneys' fees and costs against Defendants, and schedule a trial solely to determine Plaintiff's damages.

RESPECTFULLY SUBMITTED this the 16th day of November, 2009.

**EASTMAN & MYKKELTVEDT, P.C.**

/s/ Jeffrey N. Mykkeltvedt
Jeffrey N. Mykkeltvedt
Georgia Bar No. 533510
Davis K. Loftin
Georgia Bar No. 455713
Attorneys for Plaintiff

**EASTMAN & MYKKELTVEDT, P.C.**
881 Piedmont Avenue, Suite 100
Atlanta, Georgia 30309
(404) 477-2600-Office
(404) 745-0510-Facsimile

## **CERTIFICATE OF SERVICE**

This is to certify that I have this day served a true and correct copy of the foregoing *Plaintiff's Reply Brief in Support of Motion to Strike Defendants' Answer* with the Clerk of Court using the CM/ECF system which will automatically send a copy to the following:

>Fred M. Valz, III, Esq.
>Erica L. Parsons, Esq.
>CARLOCK COPELAND & STAIR, LLP
>2600 Marquis Two Tower
>285 Peachtree Center Avenue
>Atlanta, Georgia 30303

This 16th day of November, 2009.

**EASTMAN & MYKKELTVEDT, P.C.**

/s/ Jeffrey N. Mykkeltvedt
Jeffrey N. Mykkeltvedt
Georgia Bar No. 533510