IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| BENJAMIN EDWARDS, | ) | |
| | ) | |
|     Plaintiff, | ) | |
| | ) | CIVIL ACTION FILE |
| v. | ) | NO. 1:08-CV-1693-WSD |
| | ) | |
| SUNSHINE RECYCLING, LLC, | ) | |
| and LARRY JACKSON, | ) | |
| | ) | |
|     Defendants. | ) | |

## PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, MOTION TO CAP PUNITIVE DAMAGES

COMES NOW Plaintiff and files this Brief in Opposition to Defendants' Motion for Partial Summary Judgment or, in the Alternative, Motion to Cap Punitive Damages, as follows:

### I.      PRELIMINARY STATEMENT

This case arises from a collision where Defendants' negligence resulted in Plaintiff striking the rear of Defendants' tractor-trailer. Plaintiff has alleged that Defendants failed to have proper conspicuity tape on their trailer in violation of the Federal Motor Carrier Safety Administration regulations. As a result of the improper markings, Plaintiff was unable to see Defendants' trailer and struck it from behind. There is also evidence that Defendants fabricated their inspection

records and spoliated evidence regarding the maintenance and inspection of the tractor-trailer at issue and Defendant Larry Jackson's log books. Plaintiff previously filed a motion to strike Defendants' Answer, for their intentional fabrication of evidence.

When all inferences are construed in favor of Plaintiff, as they must be done on a summary judgment motion, material questions of fact exist with regard to Plaintiff's claims for punitive damages, and Defendants' motion should be denied. At the very least, the issues regarding punitive damages are best left to the jury and may be decided on a motion for JNOV, if necessary. Plaintiff will stipulate to make no mention of punitive damages until after motions for directed verdict.

## II.     <u>STATEMENT OF FACTS</u>

### A.     <u>The Collision.</u>

The collision at issue occurred on the early morning of February 5, 2007. Plaintiff was driving his tow truck west on Interstate 20 in Cobb County when he struck the rear of Defendant Sunshine Recycling's tractor-trailer, which was driven by Defendant Larry Jackson. (Pl.'s Compl. [Dkt. No. 1]). Plaintiff suffered severe injuries as a result of the collision.

Plaintiff's passenger, Jason Philips, testified that he and Plaintiff were traveling on Interstate 20 in the "slow" or far right lane. (Dep. J. Philips, p. 17, ll. 8-17, attached to Plaintiff's Supporting Excerpts as Ex. "1"). Philips recalled that

there was a tractor-trailer to their left and that the lane in front of Plaintiff's truck was clear.  (*Id.*, p. 17, l. 8 through p. 18, l. 13).  Phillips testified he looked down to send an email and when he looked back up, Defendants' tractor-trailer was in front of them and second later, they hit the back of Defendants' trailer.  (*Id.*, p. 18, ll. 10-22).

According to Phillips, Defendant Jackson's tractor-trailer was traveling at a much slower rate than the other vehicles on the roadway.  (Dep. J. Philips, p. 23, ll. 7-17).  Phillips estimated Defendant Jackson's speed to be between 35 and 40 miles per hour.  (*Id.*, p. 23, ll. 7-10).  Phillips also testified that the load on Defendants' truck was hanging "about 2 to 3 feet off the back of the truck."  (*Id.*, p. 26, l. 20 through p. 27, l. 15).  According to Phillips, the steel obstructed the view of the taillights on Defendants' truck and the taillights were "dim."  (*Id.*, p. 31, ll. 18-25).

Plaintiffs have retained Donald Hess to offer expert testimony in this matter. Mr. Hess has over 30 years of experience in the trucking business, including working as an over the road truck driver, and as an instructor teaching classes on all phases of truck driving.  (Dep. D. Hess, p. 5, l. 24 through p. 10, l. 12, attached to Plaintiff's Supporting Excerpts as Ex. "2").  Mr. Hess is currently the Director of Transportation and Public Safety Programs at John Wood Community College in Quincy, Illinois.  (*Id.*, p. 5, l. 24 through p. 6, l. 3).  Mr. Hess has opined, among

other things, that Defendants' trailer did not have properly applied conspicuity tape, did not have a rear impact guard, and that Defendant Jackson failed to activate his four-way flashers while his vehicle was moving slowly. (*Id.*, p. 28, l. 20 through p. 29, l. 15; p. 51, ll. 11-19). Mr. Hess testified that Defendants' trailer was painted a dark green color that made Defendants' trailer "pretty well invisible at nighttime in full darkness" except for any conspicuity tape applied to the trailer. (*Id.*, p. 29, l. 23 through p. 30, l. 2). It was therefore critical that the conspicuity tape be properly applied to the rear of Defendants' trailer as required by federal motor carrier safety regulations. (*Id.*, p. 30, ll. 3-5).

Mr. Hess further observed that Defendants' trailer did not have a federally required rear underride bar. (Dep. D. Hess, p. 29, ll. 9-15). According to Mr. Hess, the rear underride bar is also required to have conspicuity tape across the width of the bar. (*Id.*, p. 29, ll. 6-8). Defendants' trailer only had a metal panel on the rear of the trailer which was not marked with any conspicuity tape. (*Id.*) Mr. Hess opined that, given the lack of proper conspicuity tape combined with Jackson's failure to use four-way flashers while traveling at a slow speed, Plaintiff lacked the proper visual cues to identify Defendants' slow moving tractor-trailer. (Aff. D. Hess, attached to Plaintiff's Supporting Excerpts as Ex. "3").

**B.**    **Defendants' Fabrication and Spoliation of Evidence.**

On March 13, 2007, within a few weeks of the subject collision, Plaintiff's counsel sent letters to each Defendant and their insurance company requesting that they preserve evidence pertaining to Defendants, their tractor-trailer, and the subject collision.  (March 13, 2007 Letters, collectively attached to Plaintiff's Supporting Excerpts as Ex. "4").  Plaintiff's letter specifically requested that Defendants preserve Defendant Jackson's driver log books and daily vehicle inspection reports on the subject tractor trailer for the day of the collision and the eight days preceding the collision.  The letter also requested that Defendants preserve all maintenance, inspection and repair records on the subject tractor-trailer for the six months prior to the collision.  (*Id.*).

Plaintiff filed suit on May 9, 2008.  Defendants initially failed to answer Plaintiff's lawsuit, and the Clerk made an entry of default on October 2, 2008.  The default was eventually opened and the case proceeded with discovery.  On June 30, 2009, Plaintiff served Requests for Production of Documents on Defendants seeking, among other documents, the following:

- Defendant Larry Jackson's log books for the months of December, 2006, January, 2007 and February, 2007.  (Pl.'s Request for Production of Documents, #7, attached to Plaintiff's Supporting Excerpts as Ex. "5").

- All maintenance and repair records on the truck and trailer involved in this incident, including the vehicle maintenance file, daily vehicle condition reports or inspection reports, or any tangible evidence pertaining to the upkeep of the subject tractor and trailer.  (*Id.* at Request # 10.)

- All policies or procedures regarding the inspection and maintenance of your truck and trailer and any inspection records for the truck and trailer involved in the subject incident. (*Id.* at Request # 13)

- Any and all documents in any way pertaining to Defendant Larry Jackson reflecting or regarding his driver log books, driver trip reports, record of duty status or documents regarding the operation of Defendant's equipment (*Id.* at Request # 14)

- Any and all documents required to be maintained by DOT/CFR regulations, or Georgia's motor vehicle laws, as it relates to Defendant Larry Jackson or the truck and trailer at issue. (*Id.* at Request # 15)

In their initial response to Plaintiff's first discovery requests, Defendants failed to produce any driver log book entries for Larry Jackson, any maintenance records for the subject tractor trailer,[1] and only produced ten vehicle inspection

---

[1]  The only maintenance records produced by Defendants in this case were for a different tractor and trailer than the one involved in the collision at issue.

reports that were purportedly from January 6, 2007 through February 2, 2007, several days before the incident at issue on February 5, 2007.[2] (Vehicle Inspection Reports, attached collectively to Plaintiff's Supporting Excerpts as Ex. "6"). Defendants did not produce <u>any</u> inspection records or driver log book entries for February 5 or 6, 2007 in response to Plaintiff's initial discovery requests.

Plaintiff deposed Defendant Larry Jackson and Joseph Rich, owner of Defendant Sunshine Recycling, on August 17, 2009. Defendant Jackson testified that he had signed each of the vehicle inspection reports initially produced by Defendants, and claimed he completed a pre-trip inspection report and driver log books on the day of the collision, but had no explanation for Defendants' failure to produce these documents. (Dep. L. Jackson (August 17, 2009), p. 154, l. 4 through p. 156, l. 3, attached to Plaintiff's Supporting Excerpts as Ex. "7"). Although Joseph Rich admitted that the documents at issue were required to be maintained pursuant to FMCSA regulations, he had no explanation for the failure to produce the driver log books or vehicle inspection reports for the day of the subject collision. (Dep. J. Rich (August 17, 2009), p. 45, l. 8 through p. 48, l. 10, attached to Plaintiff's Supporting Excerpts as Ex. "8"). Rich testified that the driver log

---

[2] Of these few inspection reports produced, several of them related to other tractor-trailers owned by Defendant Sunshine, and not the tractor-trailer at issue. (Ex. "6;" Dep. L. Jackson (August 17, 2009), p. 154, ll. 4-15.)

books and vehicle inspection reports had not been produced because of "poor recordkeeping." *Id.*, p. 45, ll. 8-20.

On October 1, 2009, Defendants produced what were purported to be "Mr. Jackson's driver logs and pre-inspection reports from February 5 and February 6, 2007." (Letter from Erica Parsons dated October 1, 2009, attached to Plaintiff's Supporting Excerpts as Exhibit "9;" Defs.' Supplemental Response to Plaintiff's First Request for Production of Documents, attached to Plaintiff's Supporting Excerpts as Exhibit "10"). The driver log and vehicle inspection reports for the day of the collision at issue contain information critical to this case, including Defendant Jackson's hours of service leading up to the collision, and the condition of the lights and reflective or conspicuity tape on the trailer at issue. (February 5-6, 2007 Driver Log Books, attached to Plaintiff's Supporting Excerpts as Exhibit "11;" Vehicle Inspection Reports, collectively attached to Plaintiff's Supporting Excerpts as Exhibit "12"). As set forth in Plaintiff's Motion to Strike, the inspection records were prepared on forms that were not available until August 2007, at the earliest. Therefore, the inspection records were prepared by Defendants well after February 2007.

On October 20, 2009, after learning that the February 2007 vehicle inspection forms had been fabricated, counsel for Plaintiff traveled back to Orangeburg, South Carolina to re-depose Sunshine's office manager Donna Austin and owner Joseph

Rich, who testified that day as Defendant Sunshine Recycling's 30(b)(6) representative. Neither could provide an explanation for how Larry Jackson could have prepared his February 5 and 6, 2007 pre-trip inspection reports on forms that were not available until August 2007. (Dep. J. Rich (October 20, 2009), p. 21, l. 22 through p. 22, l. 6, attached to Plaintiff's Supporting Excerpts as Ex. "13"). Rich further testified that he discussed this issue with Defendant Jackson after learning that the vehicle inspection forms were not available in February 2007, and that Jackson had no explanation as to how that could have happened. (*Id.*, p. 26, l. 4 through p. 29, l. 6). Defendant Larry Jackson thereafter testified that he "recopied" the inspection records by hand, but failed to keep the book that purportedly contained the original reports. (Dep. L. Jackson (October 28, 2009), p. 3, l. 22 through p. 5, l. 20; p. 8, ll. 4-21, attached to Plaintiff's Supporting Excerpts as Ex. "14"). Notably, Defendant Jackson only offered this testimony after Plaintiff had proven that the vehicle inspection reports had been fabricated. In fact, prior to Plaintiff discovering the fabricated evidence, Defendant Jackson had testified that he did not know why his vehicle inspection reports had not been produced. (Dep. L. Jackson (August 17, 2009), p. 154, l. 4 through p. 156, l. 3).

Larry Jackson's driver log book forms for February 5 and 6 are also subject to scrutiny, as they were allegedly found together with the falsified vehicle inspection reports. Defendants' employees Donna Austin and Robin Walker gave conflicting

testimony regarding who found the log book documents. Both Austin and Walker initially testified that Ms. Austin found the records, but in their second depositions, taken only a few weeks later, both recanted and testified that Ms. Walker found the records. (Dep. D. Austin (Oct. 8, 2009) p. 58, l. 12 through p. 59, l. 14; p. 62, l. 9 through p. 63, l. 15, attached to Plaintiff's Supporting Excerpts as Ex. "15"; Dep. D. Austin (October 20, 2009), p. 6, l. 1 through p. 8, l. 21, attached to Plaintiff's Supporting Excerpts as Ex. "16"; Dep. R. Walker (October 28, 2009), p. 12, l. 13 through p. 13, l. 17, attached to Plaintiff's Supporting Excerpts as Ex. "17"). As Plaintiff's expert Don Hess testified, the Defendants' fabrication of the vehicle inspection records combined with the fact that the log books were found with those vehicle inspection records certainly calls into question the authenticity of the log books. (Dep. D. Hess, p. 59, p. 19 through p. 60, l. 23).

Affording Plaintiff the benefit of any one of these facts precludes summary judgment for Defendants with regard to Plaintiff's claim for punitive damages.

## III.    <u>ARGUMENT AND CITATION OF AUTHORITY</u>

On summary judgment, Plaintiff is entitled to the benefit of every reasonable doubt, and all favorable inferences that may be derived from the evidence are to be construed in Plaintiff's favor. *Tippens v. Celotex Corp.,* 805 F.2d 949 (11th Cir. 1986). Where there is evidence that a defendant knew or should have known that its employee was an unsafe driver, the jury is allowed to consider such evidence on

the issue of punitive damages. *Smith v. Tommy Roberts Trucking Co.*, 209 Ga. App. 826, 435 S.E.2d 54 (1993).

The Georgia Courts have held that the question of imposition of punitive damages is for the jury. *Harrison v. S & B Trucking, Inc.*, 179 Ga. App. 291, 346 S.E.2d 101 (1986), citing *Alliance Transp. v. Mayer*, 165 Ga. App. 344, 345, 301 S.E.2d 290 (1983). The Court of Appeals will uphold an award of punitive damages where there is any evidence to support such an award. *Id*. As set forth below, there is ample evidence to support an award of punitive damages and the Court should permit the jury to hear the evidence and make such a determination.

There is ample evidence in the record to create a genuine issue of material fact regarding punitive damages, and summary judgment should be denied for three reasons. First, Defendants' violation of federal regulations regarding their failure to properly apply conspicuity tape is sufficient under Georgia law to award punitive damages. Second, the Defendants' misconduct in fabricating evidence entitles Plaintiff to an adverse inference which is sufficient to create a fact question regarding punitive damages. Finally, the trial of this matter will not be unnecessarily expanded by denying Defendants' Motion, which can be addressed by the Court at trial on a motion for directed verdict.

**A.**  **Defendants' Violation of Federal Regulations Regarding Conspicuity Tape Supports an Award of Punitive Damages.**

There is evidence that Defendants' tractor-trailer failed to display the conspicuity tape required by FMCSA regulations.  The Georgia Courts have long held that a defendant's violation of applicable federal, state or local regulations constitutes a clear and convincing evidentiary basis for a jury to award punitive damages. *See* e.g., *Tyler v. Lincoln*, 272 Ga. 118, 527 S.E.2d 180 (2000) (evidence of violation of state and county regulations created issues of fact on punitive damage claim); *Windermere, Ltd. v. Bettes*, 211 Ga. App. 177, 438 S.E.2d 406 (1993) (failure of landlord to comply with building codes demonstrated that entire want of care evincing conscious indifference to the consequences); *Schoenbaum Ltd. Co., LLC v. Lenox Pines, LLC*, 262 Ga. App. 457, 585 S.E.2d 643 (2003) (violation of federal OSHA regulations were evidence of aggravation or outrage sufficient defeat motion for summary judgment on punitive damages).

None of the "rule of the road" cases cited by Defendants approved summary judgment where there was evidence of the violation of a mandatory public safety regulation.  In fact, in *Fowler v. Smith*, 237 Ga. App. 841, 516 S.E.2d 845 (1999), a case cited in Defendants' Brief, the Court of Appeals affirmed the denial of summary judgment where there was evidence of a violation of a federal safety regulation.  There, the defendant stopped his tractor-trailer on the interstate

12

because his travel lane was blocked by a disabled vehicle.  The Court noted that there was some evidence that the defendant violated a federal safety law by stopping on the interstate for 35 minutes without placing triangle warning devices and he failed to turn his lights when it became dark.  *Id.* at 843-44.  The Court found this evidence sufficient to create a material issue of fact as to whether the defendant's conduct "demonstrated that entire want of care which would raise the presumption of conscious indifference to the consequences."  *Id.* at 844.

Pursuant to 49 C.F.R. § 393.11, Defendants' trailer was required to have conspicuity tape across the width of the back of the trailer.  49 C.F.R. § 393.11; (Dep. D. Hess, p. 29-30).  Through their own 30(b)(6) representative, Defendants admitted that the trailer was required to have conspicuity tape across the back of the trailer.  (Dep. J. Rich (Oct. 20, 2009) p. 58, ll. 2-5).  The photographs of Defendants' trailer taken after the collision demonstrate that the tape did not extend across the back of the truck.  (Photograph attached to Plaintiff's Supporting Excerpts as Exhibit "18").  Plaintiff's expert Don Hess testified that it was critical for Defendants' to have the proper conspicuity tape on the back of Defendants' trailer.  (Dep. D. Hess, p. 30, ll. 3-5).

Mr. Hess further observed that Defendants' trailer did not have a federally required rear underride bar.  (Dep. D. Hess, p. 29, ll. 9-15).  According to Mr. Hess, the rear underride bar is also required to have conspicuity tape across the

width of the bar.  (Dep. D. Hess, p. 29, ll. 6-8).  Defendants' trailer only had a

metal panel on the rear of the trailer which was not marked with any conspicuity

tape.  (*Id.*)

Under these circumstances, a jury could conclude that Defendants violated

federal regulations by operating a tractor-trailer at nighttime, on a dark interstate,

without the mandatory conspicuity tape.  Defendants' trailer was missing

conspicuity tape across the back end of the trailer and on the required underride

guard.  Construing all facts in favor of Plaintiff, Defendants' violation of federal

regulations may be viewed by the jury as evidence of aggravation or outrage

sufficient to support an award of punitive damages.  As such, Defendants' motion

should be denied.

**B.**    **Defendants' Fabrication of Evidence Creates a Question of Fact Regarding Punitive Damages.**[3]

The fabrication and spoliation of documents directly related to the tractor-trailer at issue creates a question of fact with regard to Plaintiff's claims for punitive damages.  "Spoliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation."  *Graff v. Baja Marine Corp.*, 310 Fed. Appx. 298, 2009 U.S. App. LEXIS 1986 (11th Cir. 2009) *quoting West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999).  The obligation to preserve evidence arises when the party has notice that the evidence is relevant to current or potential future litigation.  *Kronisch v. United States*, 150 F.3d 112, 126 (2d Cir. 1998).  "Notice does not have to be of actual litigation, but can concern 'potential' litigation. Otherwise, any person could shred documents to their heart's content before suit is brought without fear of sanction."  *Bayoil, S.A. v. Polembros*

---

[3] Plaintiffs have previously filed a Motion to Strike Defendants' Answer based upon Defendants' fabrication of evidence, and contend that Defendants' Answer should be stricken based upon their intentional fabrication of evidence.  Should this Court grant Plaintiff's Motion to Strike Defendants' Answer, then their Motion for Partial Summary Judgment is moot.  At a minimum, Plaintiff is entitled to a spoliation charge and an adverse inference because Defendants have conceded that they were aware of the litigation but carelessly failed to maintain the records at issue.

*Shipping Ltd.*, 196 F.R.D. 479, 483 (S.D. Tex. 2000), *citing ABC Home Health Serv., Inc. v. IBM Corp.*, 158 F.R.D. 180, 182 (S.D. Ga. 1994).

In *Flury v. Daimler Chrysler Corp.*, 427 F.3d 939 (11th Cir. 2005), the Eleventh Circuit noted that there are no specific guidelines on spoliation in this Circuit, but that "Georgia state law on spoliation is wholly consistent with federal spoliation principles." *Id.* at 944. Under Georgia law, when a defendant creates a record and cannot account for its whereabouts, the plaintiff is entitled to a presumption that what was contained in the document was not beneficial to the party that spoliated said document. *Lane v. Montgomery Elevator Co.,* 225 Ga. App. 523, 484, S.E.2d 249 (1997). If the document in question cannot be produced in litigation, then Plaintiff is entitled to an inference that it was harmful to the defendant.[4] *Id.*

In the present case, Defendant Sunshine's President and Owner Joseph Rich testified that they were required to keep records as a motor carrier and that Defendant did in fact comply with those regulations. (Dep. J. Rich, p. 33, ll. 22 through p. 34, ll. 11). As a motor carrier, Defendant Sunshine Recycling should

---

[4] Some federal decisions have held that the destruction of documents must have been made in "bad faith." As set forth herein and in Plaintiff's Motion to Strike, Defendants had notice of potential litigation within weeks of the collision at issue and not only disposed of documents, but actually fabricated inspection records. As such, Defendants destruction and fabrication of relevant evidence was made in bad faith.

have possessed "record[s] of inspection, repairs, and maintenance indicating their date and nature" for the tractor-trailer at issue.  49 C.F.R. § 396.3.  Pursuant to the FMCSA, the inspection records "shall be retained where the vehicle is either housed or maintained for a period of 1 year and for 6 months after the motor vehicle leaves the motor carrier's control."  *Id.*

Motor carriers such as Defendant Sunshine are also required to perform or submit to periodic inspections of its tractor-trailers.  *See* 49 C.F.R. § 396.17.  In fact, Defendant is not permitted to operate the tractor-trailer unless it has passed a periodic inspection during the preceding 12 months and "and documentation of such inspection is on the vehicle."  49 C.F.R. § 396.17.  Periodic inspection reports must be retained by the motor carrier for a period of 14 months after the date of the inspection.  49 C.F.R. § 396.21.  The federal regulations also require that the driver's daily inspection reports, and the certification of any repairs, be maintained by the motor carrier for a period of three months after the reports were prepared. 49 C.F.R. § 396.11.

The federal regulations also contemplate that motor carriers such as Defendant Sunshine Recycling preserve and protect the required records. Defendant is required to protect the records "from fires, floods, and other hazards, and safeguard the records from unnecessary exposure to deterioration from excessive humidity, dryness, or lack of ventilation."  49 C.F.R. § 379.5.

Accordingly, Defendants' claims that their records were allegedly lost due to frequent moves, rats, and because Joseph Rich's Uncle "cleaned them out" are no excuse for failing to preserve the records.

The Georgia Court of Appeals has held that the spoliation of records mandated by the FMCSA constitutes a sufficient basis for a jury to award punitive damages against a motor carrier such as Defendant. In *J.B. Hunt Transport, Inc. v. Bentley*, 207 Ga. App. 250, 427 S.E.2d 499 (1992), the defendant motor carrier, J.B. Hunt, destroyed the driver's log book and vehicle inspection reports after its investigation of the incident had already begun. The Court construed the destruction of the evidence against J.B. Hunt and presumed that the log books would have showed that the driver was "compelled by Hunt to drive with insufficient rest." *Id.* at 256-57. The Court also construed the loss of the inspection reports against the defendant and "presumed that the report would have shown that the tractor-trailer was not in safe condition to be driven on the interstate highway." *Id.* at 257, *citing* O.C.G.A. § 24-4-22. Such inferences "constituted a sufficient basis for the 'aggravating circumstances' which the jury found as the predicate for punitive damages against Hunt." *Id.*

In the present case, pursuant to the federal regulations, Defendants should have prepared and maintained the inspection and maintenance records for the tractor-trailer at issue and the log books for Defendant Jackson. As set forth

18

above, counsel for Plaintiff wrote Defendants less than a month after the collision to put them on notice of Plaintiff's claims and requested that Defendants preserve all such documents. Defendants failed to produce any maintenance records for the tractor-trailer at issue and only two pages of inspection reports.[5] Of course, Plaintiff proved in the Motion to Strike that the inspection reports were fabricated long after the incident and Defendants' receipt of Plaintiff's evidence preservation letter.[6] Defendants' failed to produce any maintenance records for the tractor-trailer at issue and the only contemporaneous records regarding the condition of the truck were fabricated by Defendants more than a year after the collision. Just as in *J.B. Hunt*, the jury should be permitted to infer that Defendants' tractor-trailer was "not in safe condition to be driven on the interstate highway." *J.B. Hunt v. Bentley*, 207 Ga. App. 257. Defendants should not be permitted to fabricate, destroy, or otherwise spoliate evidence of the condition of the tractor-trailer and then avoid the consequences at trial by seeking summary judgment.

---

[5] Defendants claimed that the maintenance records for the subject tractor-trailer were maintained by Stillinger's Body Shop. In response to Plaintiff's subpoena, however, Stillinger's had no maintenance records on the subject tractor-trailer. (Letter from Stillinger's, attached to Plaintiff's Supporting Excerpts as Exhibit "19"). Moreover, the FMCSA regulations require the maintenance records must be kept "where the vehicle is either housed or maintained." 49 C.F.R. § 396.3(c).

[6] Pursuant to 49 C.F.R. §§ 390.35(c) and 390.37, the reproduction, for fraudulent purposes, of any record required under the FMCSA regulations is specifically forbidden and may subject the offending party to civil or criminal penalties.

Likewise, Defendants' actions have also called into question the authenticity of Defendant Jackson's driver log books. Defendants' spoliation of these log books has deprived Plaintiff of discovering the documentary evidence of his hours of service. Just as in *J.B. Hunt v. Bentley*, it would be a contributing factor in the collision at issue if Defendant Jackson was driving at 4:30 a.m. with insufficient rest which caused him to improperly slow his vehicle on the interstate. A jury would be permitted to infer such an aggravated circumstance and an award of punitive damages would be proper. Moreover, the fabrication and spoliation of evidence by Defendants gives rise to a presumption that the evidence was harmful to Defendants. When all inferences are construed in Plaintiff's favor on a motion for summary judgment, questions of fact remain and summary judgment should be denied.

Defendants must eliminate all questions of fact to meet their burden of proof when seeking summary judgment. "On a motion for summary judgment, the burden of establishing the nonexistence of any genuine issue of fact is upon the moving party." *Thompson v. Regency Mall Assoc.,* 209 Ga. App. 1, 432 S.E.2d 230 (1993). As set forth herein above, the Georgia Courts have held that the spoliation of records mandated by federal regulations may form a sufficient basis for a jury to award punitive damages. *J.B. Hunt v. Bentley*, 207 Ga. App. 250, 427 S.E.2d 499 (1992). Plaintiff has established a prima facie showing of his

entitlement to punitive damages and it is for the jury to decide whether to award such damages.  Defendants have failed to meet their burden on summary judgment and therefore Defendants' motion should be denied.

**C.**    **The Proceedings Will Not be Unnecessarily Expanded by Denying Defendants' Motion for Partial Summary Judgment, Which Can be Addressed by the Court at Trial on a Motion for Directed Verdict.**

The proceedings will not be unnecessarily expanded by denying Defendants' Motion for Summary Judgment, which can be addressed by the Court at trial on a motion for directed verdict if needed.  At the very least, the Court should withhold ruling until the close of evidence at trial.  The Court could always JNOV any award if needed.  "Generally, where the case has moved to a jury trial and the evidence is extensive, it is better to let the jury hear the facts and then grant a judgment n.o.v., than to court the prospect of having to re-try the entire case." *Carey v. Bradford*, 218 Ga. App. 325, 461 S.E.2d 290 (1995), *citing Hickman v. Allen*, 217 Ga. App. 701, 458 S.E.2d 883 (1995).

## CONCLUSION

Numerous questions of fact remain regarding Plaintiff's claim for punitive damages, and this is not one of those rare instances where the Defendants may side step a jury and resolve such issues as a matter of law.  In this case, Plaintiff has set forth a prima facie case that there exists clear and convincing evidence upon which a jury may base an award of punitive damages.  Faced with conflicting evidence

and inferences, the jurors would be authorized to find in Plaintiff's favor and assess punitive damages against the Defendants.  Plaintiff is ready to proceed with trial, and the jury should be permitted to consider the evidence in support of Plaintiff's claim for punitive damages.  As such, Plaintiff respectfully asks the Court to deny Defendants' motion for partial summary judgment.[7]

RESPECTFULLY SUBMITTED this the 24th day of November, 2009.

**EASTMAN & MYKKELTVEDT, P.C.**


/s/ Jeffrey N. Mykkeltvedt
Jeffrey N. Mykkeltvedt
Georgia Bar No. 533510
Davis K. Loftin
Georgia Bar No. 455713
Attorneys for Plaintiff

**EASTMAN & MYKKELTVEDT, P.C.**
881 Piedmont Avenue, N.E.
Suite 100
Atlanta, Georgia 30309
(404) 477-2600

---

[7] Plaintiff does not contest the fact that the $250,000.00 cap on punitive damages will apply to this case.  However, Plaintiff specifically reserves the right to contest the constitutionality of the cap.

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that I have this day served a true and correct copy of the

foregoing ***Plaintiff's Brief in Opposition to Defendants' Motion for Partial***

***Summary Judgment or, in the Alternative, Motion to Cap Punitive Damages*** with

the Clerk of Court using the CM/ECF system which will automatically send a copy

to the following:

Fred M. Valz, III, Esq.
Erica L. Parsons, Esq.
CARLOCK COPELAND & STAIR, LLP
2600 Marquis Two Tower
285 Peachtree Center Avenue
Atlanta, Georgia 30303

This 24th day of November, 2009.

**EASTMAN & MYKKELTVEDT, P.C.**

/s/ Jeffrey N. Mykkeltvedt
Jeffrey N. Mykkeltvedt
Georgia Bar No. 533510