IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

BENJAMIN EDWARDS,

          Plaintiff,

v.                                   1:08-cv-1693-WSD

SUNSHINE RECYCLING, LLC,
and LARRY JACKSON,

          Defendants.

## OPINION AND ORDER

This matter is before the Court on Plaintiff Benjamin Edwards' ("Plaintiff") Motion to Strike Defendant's Answer [42] and on the arguments of the parties presented at the hearing on the motion on February 10, 2010.

**I.    BACKGROUND**

In the early morning of February 5, 2007, Plaintiff was driving his tow truck west on Interstate 20 in Cobb County when he struck the rear of Defendant Sunshine Recycling, LLC's ("Sunshine Recycling" or "Defendant") tractor-trailer. Plaintiff contends that the collision occurred because Defendant Larry Jackson ("Jackson"), who was driving the tractor-trailer, was negligently traveling at an unsafe speed below the minimum speed limit without his four-way flashers on. Plaintiff further contends the tractor-trailer was negligently inspected and

maintained, that the rear of the flat-bed trailer was missing the proper, federally-required conspicuity tape, and that the rear trailer lights were either not functioning properly or were obscured by the load Defendants were hauling at the time.

On May 9, 2008, Plaintiff filed this action. Defendants failed to answer, and on October 2, 2008, the Clerk of Court made an entry of default. Defendants moved to open the default, claiming Plaintiff would not suffer any prejudice because Defendants maintained all relevant evidence and records. On March 17, 2009, the Court set aside the entry of default and permitted Defendants to answer.

In response to Plaintiff's discovery requests for Jackson's driver log books and the inspection records for the tractor-trailer, Defendants produced only inspection reports for the tractor-trailer for ten days of operation between January 6, 2007 and February 2, 2007. Defendants failed to produce any driver log book entries for Jackson or any maintenance records for the tractor trailer. At his deposition, Joseph Rich, owner of Sunshine Recycling, testified he could not explain why Sunshine Recycling had failed to produce the driver log books or vehicle inspection reports for the day of the collision.[1] On August 17, 2009, Jackson testified at his deposition that he did not know why his vehicle inspection reports from the date of the incident had not been produced in discovery.

---

[1] Defendants have speculated that rats may have eaten the original documents.

On October 1, 2009, Defendants produced what were represented to be Defendant Jackson's driver log books and vehicle inspection reports for February 5 and 6, 2007. Defendants claimed they found these documents in a box in their offices. The vehicle inspection reports were filled out on forms created and sold by J.J. Keller & Associates, Inc. The inspection reports dated January 6, 2007, to February 2, 2007, are visibly different from the reports dated February 5 and 6, 2007. The forms initially produced by Defendants bore J.J. Keller copyright dates of either 2000 or 2003. The February 5 and 6 inspection reports, however, bear a J.J. Keller copyright date of 2007.

Plaintiff learned through subsequent investigation that J.J. Keller revised the 2003 vehicle inspection reports in July 2007. The July 2007 revision was not distributed for sale prior to August 16, 2007. Thus, it is impossible for Defendants to have completed in February 2007 a vehicle inspection report on a J.J. Keller form bearing a 2007 copyright, because that form did not exist at that time.

Plaintiff again deposed Joseph Rich, who had no explanation for how Jackson could have prepared his February 5 and 6, 2007, pre-trip inspection reports on forms that were not available until August 2007. Arguing that Defendants fabricated key evidence in this case, Plaintiff moved the Court to sanction Defendants by striking their Answer.

After Plaintiff filed his motion to strike, Jackson was again deposed. Jackson testified that on February 5 and February 6, 2007, he prepared inspection reports and driver logs and submitted them to Sunshine Recycling at the end of the day. Jackson's employment with Sunshine Recycling ended in October 2007. He claims, however, that he learned his former employer had been unable to locate his inspection reports from the date of the collision. According to Jackson, he went back to Sunshine Recycling one day in early 2008, searched the cabs of several trucks and found the books containing the carbon copies of his inspection reports. Jackson claims he then copied the information from the carbons onto clean forms and left the re-copied forms on a desk in Sunshine Recycling's office. He claims he left the carbon copy books on a picnic table in the back room. Sunshine Recycling claims it has been unable to locate the original inspection reports or the carbon copy books.

Plaintiff argues Defendants have produced fabricated evidence and Plaintiff questions the veracity of other documents produced, especially the log books produced contemporaneously with the allegedly recopied inspection reports. Arguing that Defendants concocted the "recopying story" only after being caught in a fabrication, Plaintiff contends the fabrication was intended to be a fraud on the litigation process, and thus Defendants' Answer must be stricken. Defendants

represent that they had no knowledge that Jackson recopied the inspection reports and argue that a lesser sanction is appropriate.

On February 10, 2010, the Court conducted a hearing on Plaintiff's motion to strike. Defendants' counsel elected not to bring Jackson or anyone from Sunshine Recycling to testify.

## II. DISCUSSION

### A. Sanctions

"A court may impose sanctions for litigation misconduct under its inherent power." Eagle Hospital, LLC v. SRG Consulting, Inc., 561 F.3d 1298, 1306 (11th Cir. 2009). "The key to unlocking the court's inherent power is a finding of bad faith." Id. at 15 (citing Barnes v. Dalton, 158 F3d 1212, 1214 (11th Cir. 1998). This inherent power "must be exercised with restraint and discretion." Roadway Express, Inc. v. Piper, 447 U.S. 752, 764 (1980).

"When a party fabricates evidence purporting to substantiate its claims, federal case law is well established that dismissal is appropriate." McDowell v. Seaboard Farms of Athens, Inc.,1996 U.S. Dist LEXIS 19558 at * 23 (M.D. Fla. Nov. 4, 1996).

B.   Analysis

The Court finds Jackson's story to be incredible on its face.[2] Jackson would have us believe that he went back to his former employer, months after he quit, searched for evidence he believed was key to an on-going litigation in which he himself was a named defendant, found that evidence, and then created clean copies, abandoned the original evidence on a picnic table, and left the clean copies in the office, without telling anyone at Sunshine Recycling what he had done. Jackson relayed none of this at his first deposition, even when asked whether he had any information why these documents had not been produced. It is simply not believable that Jackson, after going above and beyond the call of duty to locate and "preserve" evidence, would then fail to mention to anyone—even when asked—that he had indeed found the documents. The Court finds that Jackson acted in bad faith by fabricating evidence and permitting it to be produced in discovery.

Sunshine Recycling's claim that it found the recopied documents in a box in their office is certainly suspicious. This explanation only makes sense if one believes that Jackson, after going out of his way to locate missing documents, concluded he ought to leave those documents in the office without ever telling anyone that his efforts to help had succeeded. The Court, of course, must consider

---

[2] The Court also finds telling defense counsel's decision not to call Jackson to testify at the February 10, 2010, hearing on this matter.

why these documents were untimely produced and the credibility of the explanations offered for the conduct that resulted in the unavailability of the documents at issue. Having considered the facts, the Court evaluates an explanation, supported by the testimony made available to the Court, that may apply here. It is possible that Jackson failed to complete pre-trip inspection reports, as he was required to by law, on February 5 and 6, 2007, and, fearing regulatory repercussions, elected to protect himself by subsequently creating those documents, leaving them in Sunshine Recycling's office where he hoped they would be "found" and, hoping further that his failure timely to create them would go unnoticed. Without hearing Jackson's testimony, the Court does not have a clear picture of what happened. The fact that these required documents are inauthentic is disturbing. At minimum, Sunshine Recycling presented falsified evidence as authentic and Jackson presented a concocted account of what he did. The Court finds that Sunshine Recycling and Jackson acted in bad faith, albeit at different levels, Jackson by his concoction and Sunshine Recycling by ignoring the suspicious circumstances surrounding the fabricated documents and by making no effort to verify their authenticity before producing them in discovery.

     Although Plaintiff argues the vehicle inspection reports, which contain information regarding the condition of the trailer lights and conspicuity tape, are

critical evidence in the case, these documents relate only to at least one of Plaintiff's theories of liability.  Plaintiff's argues that Defendants were negligent in the inspection and maintenance of the tractor-trailer and that the tail lights may not have been functioning properly.  The inspection records certainly bear on this argument.  But Plaintiff also argues that rear trailer lights were obscured by the load Defendants were hauling at the time of the collision.  In light of this alternate theory, and because the Court cannot conclude on the record here that a fraud on the litigation process was intended by the Defendants, the Court does not find it is appropriate to strike Defendants' Answer.  Defendants should be permitted to defend against allegations that are unrelated to the inauthentic inspection reports they produced.

The Court concludes that under the circumstances here a sanction is appropriate but should be tailored to the impact of the falsified inspection reports and tainted driver's logs for February 5 and 6, 2007.  Specifically, Defendants are precluded from introducing any evidence on the functioning of the tail lights on the tractor-trailer, except the evidence the Court was advised at the February 10, 2010, hearing that may be offered by the passenger who was in Plaintiff's vehicle when the collision occurred, provided such testimony is admissible.  The Court further orders that Defendants shall pay the attorneys' fees and expenses incurred by

Plaintiff in conducting discovery into the circumstances of the production of the February 5 and 6, 2007, inspection reports and driver logs, and in filing Plaintiff's Motion to Strike Defendants' Answer.

### III.  CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Plaintiff's Motion to Strike Defendant's Answer is **DENIED**.

**IT IS FURTHER ORDERED** that Defendants are precluded at trial from introducing any evidence, including but not limited to the February 5 and 6, 2007, vehicle inspection reports and driver's logs, supporting the claim that at the time of the accident the tail lights on the tractor-trailer were properly functioning, provided however that Defendants shall be permitted to admit the third-party witness testimony of the passenger in Plaintiff's vehicle on the issue of the functioning of the rear trailer lights.

**IT IS FURTHER ORDERED** that Defendants shall pay the attorneys' fees and expenses incurred by Plaintiff in filing his Motion to Strike Defendants' Answer and in conducting discovery to investigate the production of the February 5 and 6, 2007, vehicle inspection reports and driver's logs.  Plaintiff shall, on or before March 5, 2010, file with the Court a detailed description, broken down by

date, of the legal services provided to prepare the Motion to Strike Defendants' Answer and to conduct discovery into the production of the February 5 and 6, 2007, drivers' logs and inspection reports, the hourly rate charged for each service provided, and an itemized list of expenses incurred in preparing the motion and conducting discovery related to it.

    **SO ORDERED** this 19th day of February, 2010.

                                                   _____
                                                   WILLIAM S. DUFFEY, JR.
                                                   UNITED STATES DISTRICT JUDGE